YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* MRS. M. A. SMITH.

[60 South. 73.]

1. RAILROADS. *Injuries to passengers. Proximate cause. Instructions.*

Where two railroads occupied a Union Depot and, before a passenger could embark on the trains of either road, it was necessary for her to exhibit her ticket to the gatekeeper who directed her which train to take, and plaintiff having purchased a ticket from defendant exhibited the same to the gatekeeper and was directed to take the wrong train and was carried away from her destination and, in returning to the point of her departure on the other road in order to get home, the cars of the other road were so poorly heated that she contracted tonsilitis and suffered greatly. In such case an instruction that if plaintiff contracted the tonsilitis on account of the poorly heated cars of the other road she could not recover from defendant, was properly refused, it being a question for the jury whether the damages resulting from the cold cars of the other road on plaintiff's return to her point of departure was the proximate result of the failure of defendant's gatekeeper to direct her to the proper train.

2. CARRIERS.  *Damages.  Proximate cause.*

> In order that a person may be liable for damages resulting from his negligence it is not necessary that his negligence should have been the sole cause of the injury.  His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and although the author or authors of such cause or causes may also be liable therefor.

3. CARRIERS.  *Degree of care required towards passengers.*

> A carrier is required to exercise the highest degree of care and attention in directing a passenger who has purchased a ticket and gone into its station, as to which train to take to reach her destination.

APPEAL from the circuit court of Coahoma county. HON. SAM C. COOK, Judge.

Suit by Mrs. M. A. Smith against the Yazoo & Mississippi Valley Railroad Company.  From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet*, for appellant.

The court erred in refusing instruction number four requested by defendant below.  This instruction is as follows:

"The court instructs the jury for the defendant that if they believe from the evidence that the plaintiff's throat became sore and that she suffered therefrom, and that the same was caused by the car of the Illinois Central Railroad Company, on which she returned from Batesville to Memphis, being cold, they will not allow her any damages therefor, because the jury cannot allow this plaintiff any damages unless the same was the proximate result of a negligent or wrongful act of some agent or employee of the Yazoo & Mississippi Valley Railroad Company."

Therefore, the jury were allowed to assess damages against the appellant company for appellee's alleged sickness springing from the negligence of the Illinois Central Railroad Company in failing to properly heat its car on

which appellee took passage. It was along this line that appellee's case moved, and it was upon this theory that the case was submitted to the jury. It was the ruling of the court that as a matter of law the negligence of gatekeeper Willis was the proximate cause of appellee's sickness produced by the failure of the I. C. R. R. to properly heat its car. We submit that this action of the court was gross, prejudicial and reversible error, as the main injury alleged to have been sustained by appellee was her sickness resulting from her ride on the cold car of the I. C. The question upon which this case turns is the liability of the appellant company for the failure of the I. C. to properly heat its car—was the negligence of the appellant's employee, Gatekeeper Willis, the proximate cause of appellee's sickness. In other words, the case revolves around the question of proximate cause.

As said in the *Billingsley case*, 56 So. 790: "Proximate cause is a vexed, metaphysical question, but it can safely be said that in order to constitute proximate cause there must be a casual connection between the injury and the negligence complained of," and our contention is that there was no such causal connection as to appellee's sickness. For the delay, pecuniary expense and inconvenience arising from Gatekeeper Willis's alleged mistake we concede that appellee was entitled to damages, but not for her sickness.

Not every intervening cause, we concede, can be regarded as the efficient or proximate cause, and there are also many classes or kinds of intervening agencies. However, our proposition is that as to the illness of appellee resulting from the insufficiently heated car of the I. C., the appellant company is not liable for the reason that the I. C. R. R. Co. was an efficient intervening cause, and the responsibility for such sickness must lie with the I. C. and not with the appellant company.

An examination of the authorities on this phase of proximate cause will disclose, we submit, that there is no

conflict, but that all are in harmony.   We will make a few quotations on this particular point:

"It is a sound conclusion that where an intervening, distinct, independent and efficient cause breaks a causal relation between the original wrong and the injury, this intervening cause then becomes the proximate cause of the injury, and the remoter cause cannot be made the basis of an action for recovery of damages."   White's Supplement to Thompson's Commentaries on Laws of Negligence, section 54.

"If subsequently to the original wrongful or negligent act a new cause has intervened of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote."   1 Thompson on Negligence, p. 55.

"The connection is usually enfeebled and the influence of the injurious act controlled where the wrongful act of the third party intervenes, and where any new agent introduced by accident or design, becomes more powerful in producing the consequences, than the first injurious act.   It is, therefore, required that the consequences to be answered for should be natural as well as proximate."   1 Thompson on Negligence, p. 49, section 47.

"The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened."   29 Cyc. 499.

The following quotation from the opinion in the case of *Fowlkes* v. *Railway Co.*, 32 S. E. 464, we find to be widely quoted:   "That the defendant was guilty of negligence is conceded, and that it is liable in damages for the direct consequences of that negligence is also conceded.   .   .   .   It is not only requisite that damages, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate, and not the remote, cause of any event is regarded.   In other words, the law always refers the in-

jury to the proximate, not to the remote, cause.  If any injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to 'the last or proximate cause, and refuse to trace it to that which was more remote.  To the proximate cause we may usually trace consequences with some degree of assurance, but beyond that we enter a field of conjecture where the uncertainty renders the attempt at exact conclusions futile.  If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action.''

In *Railway Company* v. *Columbia*, 69 Pa. 338, the court holds that, ''Where two distinct successive causes wholly unrelated in operation contribute towards the production of an accident resulting in injury and damage, one of such causes must be the proximate and the other the remote cause of the injury.  A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause do nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct successive, unrelated and sufficient cause of the injury.''

In 8 Am. & Eng. Ency. of L., p. 571, it is said:  ''In the law of damages the proximate cause of an injury may in general be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, where, had it not happened, the injury would not have been inflicted, notwithstanding the latter.  Where an efficient producing cause for injuries is found, it will be considered

the proximate cause, unless another cause or causes, not incident to but independent of it, are shown to have intervened and produced the injury. The question must always be, therefore, whether there was any intermediate cause disconnected from the primary act and self-operating, which produced the injury; an inquiry to be answered in accordance with common understanding. Where this question can be answered in the affirmative, the independent and intervening cause will be regarded as the proximate cause, and the author of the original act discharged."

However, the law as to intervening agency is modified to this extent that though the negligent act or omission be removed from the injury by intermediate causes and effects, yet if the party guilty ought reasonably to have foreseen the ultimate consequences, such negligence is deemed in law the proximate cause of the injurious effect.

Setting out this principle in more concrete form, 1 Thompson on Negligence, sec. 55, p. 58, says: "If A is guilty of a negligent act which would not have produced the catastrophe but for the subsequent intervening negligence of B not being a result which A might reasonably anticipate, nor against which it was his duty to guard, A will not be responsible for the resulting damages."

The Mississippi Court, in the *Wooly* case, 77 Miss. 927, quotes with approval the rule laid down in 16 Am. & Eng. Ency. of Law, p. 476 as follows: "In order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, and that it was such as might or ought to have been foreseen in the light of attending circumstances."

In this connection, we call the attention of the court to the case of *Railway Co.* v. *Price*, 43 L. R. A. 402. In this case, through the negligence of the conductor of a railway company a passenger on its cars had been carried beyond the point of her destination, and she went to a hotel to

spend the night. During the night, through the negligence of an employee of the hotel, the lamp exploded and the plaintiff was injured. Says the court in its opinion in this case: "Taking her version of the manner in which she was injured, the injury was occasioned by the negligence of the proprietor of the hotel or his servants in giving her a defective lamp. The negligence of the company in passing her station was, therefore, not the natural and proximate cause of her injury. There was the interposition of a separate, independent agency, the negligence of the proprietor of the hotel, over whom, as we have shown, the railway company neither had nor exercised any control."

We now beg to call the attention of the court to a case which is absolutely decisive of the present one. It is a leading case, much cited, and is the only case we have been able to find, after an extensive investigation, in which the facts are very similar to those in the present case. The case in question is that of *Railway Co.* v. *White*, 122 Am. St. Rep. 631, in which the court expressly holds that damages for injuries caused by the negligence of the other carriers over whose roads a passenger is taken, cannot be recovered from the initial carrier because of the misdirection of its agents as to the best route to be taken. We quote without any comment from the opinion of the court in this case. This case fits like a glove and is absolute authority for our contention:

"In the third paragraph of the charge the trial court grouped and submitted to the jury to be determined by them, the facts claimed by the plaintiff to have been established by the evidence, and charged the jury that if they found the facts so grouped to be true, 'and if you further believe from the evidence that the plaintiff's wife, Mrs. E. E. White, was injured and that her injuries were directly caused by reason of the fact that she made the trip over the route by way of Tyler and Lufkin, and that she would not have received such injuries if she had gone

the route by way of Texarkana, then you will find for the plaintiff on this particular charge of negligence.' The terms of the charge embrace all of the delays, inconveniences and injuries which occurred to Mrs. White between Lufkin and Kirbyville without regard to the negligence of those carriers which transported her between those points. The effect of the charge is to make the plaintiff in error responsible for whatever occurred upon those roads the same as if they had been operated by this company. The plaintiff's cause of action rested upon the proposition that, by the misrepresentations of the agent at Maude, plaintiff and his family were caused to go in a wrong direction on the railroad of the plaintiff in error, which placed them in a position which necessarily caused them delays and inconveniences to the detriment of his wife; and to hold the St. Louis & Southwestern Railroad Company liable for delays on other roads, the plaintiff must prove that such delays were not caused by failure of such other roads to run their trains on time or by other negligence of said railroad companies. It was error to give the charge complained of, for which the judgments of the district court and court of civil appeals are reversed and the cause is remanded.' '

Our own court has always adopted a conservative attitude in considering this doctrine of proximate cause. There is nothing in any of its utterances in discussing this question to justify the presumption that it will not adopt the radical and extreme position urged by appellee.

As indicative of the temper of this court in treating this question, we refer without comment to the following cases: *Pullman Co.* v. *Stern*, 88 Miss 390; *Railway Co.* v. *Rooks*, 78 Miss. 91.

*Cutrer & Johnston*, for appellee.

At the time the appellant perpetrated upon appellee the wrong complained of, the appellant must have known that the appellee would, from the very necessities of her situa-

tion, be compelled to take a car of the Illinois Central
Railroad Company on which to return to Memphis, and it
was for the jury and not for the court to say as to whether
or not anything or everything which happened to the ap-
pellee to her damage during the interval between the time
she left Memphis on the Illinois Central train and the time
she left Memphis the following forenoon on the appellant's
train for Clarksdale, was or was not the proximate cause
of the injuries which the appellee suffered.   These ques-
tions of proximate cause are always questions for the jury
and not for the court.

The supreme court of Massachusetts has very properly
stated this rule in the case of *Lane* v. *Atlantic Works*, as
follows:   "The act of a third person intervening and
contributing a condition necessary to the injurious effect
of the original negligence will not excuse the first wrong-
doer, if such act ought to have been foreseen.   The ori-
ginal negligence still remains the culpable and direct
cause of the injury.   The test is to be found in the prob-
able injurious consequences which were to be anticipated,
and not in the number of subsequent events and agencies
which might have arisen.   Whether in any given case the
act charged was negligent and whether the injury suffered
was, within the relation of cause and effect, legally attri-
butable to it, are questions for the jury.   They present
oftentimes difficult questions of fact, requiring practical
knowledge and experience for their settlement, and where
there is evidence to justify the verdict, it cannot be set
aside as a matter of law.   The only question for the court
is whether the instructions given upon these points stated
the true test of liability."   *Lane* v. *Atlantic Works*, 111
Mass. 139-140.

The rule is generally stated to this effect, that he who
is chargeable with the first wrongful act or negligence
which occasions through a connected series of causes and
effect, an injury to another without his fault, is responsible
for that injury provided there is no intermediate responsi-

ble cause. *Gochen Turnpike Co.* v. *Sears,* 7 Conn. 86-84; *Hurley* v. *N. Y. Brewing Co.,* 43 N. Y. Supp. 259; *Lynn Gas Co.* v. *Maryland Fire Ins. Co.,* 158 Mass. 570; *Seale* v. *Gulf R. R. Co.,* 65 Tex. 274.

*Lane* v. *Atlantic Works,* 111 Mass. 136, *supra·* "Whether a given act is the proximate cause of an injury is a question for the jury. It is not a question of science or knowledge. It is to be determined as a fact in view of the circumstances attending it."

*Milwaukee R. R. Co.* v. *Kellogg,* 94 U. S. 469-474: It is the province of the jury to look at the facts and ascertain whether they are naturally and probably connected as a sequence of the prime cause, or disconnected by some intervening agency affecting its operation.

*Hartvig* v. *N. P. Lbr. Co.,* 19 Ore. 522-525: So that whether a given cause will probably lead to given result is a matter to be determined by the average experience of mankind, that is, by a jury rather than by a legal scholar on the bench.

Many cases may be cited where the original wrongdoer has been held liable on a state of facts where it was first thought it might appear that an intermediate agency had operated. For instance, in one case "by reason of a defective ladder a workman fell and struck another workman." It was held in an action against the master by the latter that the latter's injury was not remotely, but was directly, caused by the defective ladder. *Ryan* v. *Miller,* 12 Daily (N. Y.), 77; *Jackson* v. *Galveston R. R. Co.,* 90 Tex. 372; *Sherman* v. *Savour,* 1 Allen (Mass.), 191; *Sneesley* v. *Lankashire R. R. Co.,* L. R. 9 Q. B. 263.

Speaking upon the question of causation also, it may be stated to be the general rule that if the negligence of one person results in an injury to another which develops or aggravates a pre-existing tendency to a disease in the person injured, the negligence and not the disease is deemed in law to be the proximate cause of the injury. *Freeman* v. *Mer. Mutual Accr. Assn.,* 30 N. E. (Mass.),

1013; *Crane Elevator Co. v. Lippert*, 63 Fed. (C. C. A.), 942; *R. R. Co. v. Falvey*, 104 Ind. 409; *Louisville R. R. Co. v. Jones*, 108 Ind. 551.

That the consequences are remote does not tend to relieve the wrongdoer from liability. The rule of the criminal law is that "whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible if death follows, he will be deemed guilty of homicide, though the person beaten would have died from other causes, or would not have died from this one had not others operated with it; provided the blow really contributed either mediately or immediately to the death, and the wound need not be a concurrent cause, much less need it be the next proximate one; for if it is the cause of the cause, no more is required, and the courts have held, "that if it is sufficient to show, in cases where life and liberty are involved, that the wrong was the 'mediate cause,' it must surely be sufficient where nothing more than money is involved." 1 Thompson on Negligence, sec. 149; see also section 150 with cases cited.

In this cause it must be borne in mind that the appellee was a passenger of the appellant at the time she was wrongfully placed by appellant upon the wrong train, having purchased a ticket from the appellant, entitling her to be safely and promptly transported from Memphis to Clarksdale, and having entered the station and been directed upon the cars stated by the appellant to be its cars. *Metcalf v. Y. & M. V. R. R. Co.*, 97 Miss. 465-467; 6 Cyc. 536.

The appellant owed the appellee the highest degree of care, that extraordinary high degree of care which a carrier always owes to a passenger, and the appellee was entitled to recover of the appellant for all damages of every character, direct and consequential, suffered by her because of the misconduct of the appellant in placing appellee upon the wrong train.

The conduct of this appellant in that respect was a positive wrong and the remedy the appellee was entitled

to resort to, to recover compensation for the wrong, was
not limited to those springing out of a breach of the con-
tract of carriage.

REED, J., delivered the opinion of the court.

In the late afternoon on a cold day in January, 1910,
the appellee, accompanied by her little daughter, went to
the Poplar street station of the Yazoo & Mississippi Valley
Railroad Company in Memphis, Tenn., to take a train
over that road which departed at 5:15 o'clock to her home
in Clarksdale, Miss.   There is a train shed at this station,
used by both the Illinois Central Railroad and the Yazoo
& Mississippi Valley Railroad, and there is a railing which
separates the train from the other part of the station,
where passengers wait for their trains.   A gate is pro-
vided in this railing, and it is only through it that pas-
sengers can go to the trains.   An employee of both rail-
roads, known as the gatekeeper, stands at this gate, ex-
amines the tickets of the passengers passing through, and
directs them to the proper train.   On the date named,
appellee presented her ticket to the gatekeeper, who ex-
amined it, and directed her to the train he said she was to
take.   She went to the train to which she was directed, ·
still exhibiting the ticket, which entitled her to passage
from Memphis to Clarksdale, and which was sold and
issued to her by appellant.   She was placed on the train
by a man dressed in a uniform standing by the side of the
car, and whom she understood to be one of the employees
on the train.   She was asked by the trainman the ques-
tion, "Where to?" and she answered, "Clarksdale."
After the train had left Memphis, she was informed by the
conductor that she was not on the Yazoo & Mississippi
Valley train for Clarksdale, but on the Grenada accom-
modation train of the Illinois Central.   This train left
Memphis at five o'clock p. m.   In order to get to her home ·
in Clarksdale, she had to return to Memphis.   At Bates-
ville, Miss., she left the train going to Grenada, and was

put on a train returning to Memphis.   The car she had
to travel in on this train was very uncomfortable, not
sufficiently heated, with the glass in a window and door
broken.   The weather was very inclement, and the
ground was covered with snow.   She reached Memphis
at 11.20 p. m., having been out on this unnecessary trip
for over six hours.   She spent the night at a hotel, and the
next day reached her home in Clarksdale about noon.   If
she had left, according to her purpose, on the train for
Clarksdale, she would have reached home about seven
o'clock, after a journey of about two hours.   From the
exposure incident to the travel on the train to which she
was wrongly directed, and on the train which she had to
take in order to return to Memphis, and incident to the
general delay in her journey home, she contracted and
suffered from a severe attack of tonsilitis.   The jury, on
the trial of her case against appellant, found a verdict in
her favor for five hundred and seventy-three dollars and
thirty-three cents, from which this appeal is prosecuted.

Appellant contends that the error committed by the trial
court was in refusing instruction No. 4, asked by appellant,
which is as follows:   "The court instructs the jury, for
the defendant, that if they believe from the evidence that
plaintiff's throat became sore and that she suffered there-
from, and that the same was caused by the car of the
Illinois Central Railroad Company, on which she re-
turned from Batesville to Memphis, being cold, they will
not allow her any damages therefor, because the jury can-
not allow this plaintiff any damages, unless the same were
the proximate result of a negligent or wrongful act of some
agent or employee of the Yazoo & Mississippi Valley
Railroad Company."   We do not think that the court
erred in refusing this instruction.   In fact, a review of the
instructions given in this case convinces us that the law
was properly and sufficiently presented to the jury in the
instructions given for both the plaintiff and defendant.
A review of all the facts in this case, taken together, in

connection with the instructions given, shows that it was proper to refuse instruction No. 4. The liability of appellant should be ascertained from all of the occurrences and succession of events following the act of its agent in directing appellee to the wrong train. We know that the subject of proximate cause has been vexatious to the courts. All questions of pertinent facts in a case are for the jury's consideration, and these include the facts from which may be drawn the conclusion as to what constitutes the proximate cause in a case. "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." *Milwaukee & St. Paul R. R. Co. v. Kellogg*, 94 U. S. 469, 24 L. Ed. 256.

It is well-nigh impossible to fix any definite rule on the subject of proximate cause. Each case, as arises, presents a somewhat different state of facts from others. Therefore, in the present case, the facts were presented to the jury with a fair and sufficient statement of the general rules of law applicable, and from all these a jury rendered its decision. In the case of *Telephone Company v. Woodham*, 99 Miss. 318, 54 South. 890, touching the question of the liability of a defendant where his negligence combines with that of another, or with any other independent intervening cause, this court, speaking through SMITH, J., said: "In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and although the author, or authors, of such cause, or causes, may also be liable therefor."

It will be noted in this case that appellee became the passenger of appellant when she purchased her ticket and went into appellant's station, that she was thereupon

entitled to receive the highest degree of care and atten-
tion, that by reason of being placed upon the wrong train
she was required to take an unnecessary railroad trip of
over six hours, riding in a poorly fitted car, on a very
inclement night, and that she was delayed for a night and
half a day in reaching her home, and that she suffered
physically, not only during the time she was kept from
her home, but thereafter, in a spell of sickness resulting
from the exposures during the unnecessary night trip.
The jury had before it the evidence from which it could
decide that all of the damages sustained by appellee
in this case resulted from the failure of the agent of
appellant to direct her to the proper train—in other
words, the failure of appellant, through its agent, to ful-
fill its obligation to exercise the highest degree of care
which it owed to appellee, its passenger. We will not
disturb the jury's verdict.

*Affirmed.*