TRI-STATE TRANSIT CO. *v.* MARTIN.

(Division B. March 7, 1938.)

[179 So. 349. No. 33054.]

Stevens & Stevens, George R. Nobles and Bob Ray, all of Jackson, for appellant.

White & McCool, of Canton, for appellee.

Argued orally by **John Morgan Stevens, Jr.**, for appellant and by **J. P. White** and **D. C. McCool**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, a negro woman, thirty-seven years of age, had arranged to visit her parents, who resided in Jones county about four miles from Summerland; and as a part of that arrangement a conveyance was to be sent to Summerland to meet her on arrival of appellant's noonday bus on Thursday, August 13, 1936. On the morning of that day appellee, with three children, took passage on one of appellant's busses, having procured and presented the necessary tickets to Summerland; and her brother went to Summerland with a conveyance to meet her, as previously arranged.

The bus driver was a new employee on that route and was unacquainted with the route or the stops. At Taylorsville he got on the wrong road, and, after being directed by a passenger to the correct route, appellee took the precaution to advise him that her stop would be next. The driver did not stop at Summerland nor announce his approach to that point, but continued beyond as if there were no such stop. The highway at Summerland had been changed since appellee's last visit

to her parents, and she did not realize that Summerland had been reached or passed until the bus arrived at or near Knight's filling station and store, nearly three miles beyond. She thereupon at once informed the driver that he had taken her beyond her station and requested that she be returned. It was not allowable for appellant to turn around in response to this request, but no compliance with it in the alternative was offered, and she was put out at Knight's with her baggage and children.

This was about 12 o'clock on an extremely dry and hot August day. It was about four miles from this point to her parents' home. She had no money to employ a conveyance. She left part of her baggage with Mrs. Knight, and with the remainder she started afoot to her parents' home. She was carrying in her arms a child eighteen months old. There was another child four years old, who soon became exhausted and also had to be carried. The other child eight years old was able to render little assistance. Appellee was three months pregnant, and in this condition with the burdens aforementioned she did not reach her parents' home until 4 o'clock, and then in a state of exhaustion and prostration, wet with perspiration, nauseated, with pains in her head, stomach, back, and side, and with a fever. She went immediately to bed and there remained until Monday morning when, by conveyance, she was taken to the station, from whence she reached her home in Madison county. She was there taken at once to a competent physician who, upon examination, was apprehensive of a miscarriage. At the direction of the physician she was put to bed and there remained for about three to four weeks, and was in bed for a part of the time for an additional like period, or a little longer. Previously she had always been in good health.

Her physician continued to attend her at frequent intervals until the birth of her child in February, and had her under observation until the trial of this cause

in June, 1937. He testified that her health was permanently impaired, that she would never be able to work in the heat as she had always theretofore been accustomed to do, and said she had suffered from what he termed a heatstroke attributable to her experience above set out. No attempt was made to question or discredit the physician's testimony in any way; he was not even cross-examined.

The first contention of appellant to be noticed is that appellee should have employed a conveyance at Knight's and that, had she done so, her personal injury would have been avoided and her damages would have been only the price paid for the conveyance. It has already been mentioned that she had no money to employ a conveyance. The poor are entitled to avail of the facilities of public carriers upon the payment of the public rate and are not required to have an additional sum to provide against the consequences of a breach of the contract of carriage; they are entitled to travel upon the assumption that there will be no failure of duty on the part of the carrier. Moreover, in the recent case, North American Ins. Co. v. Henderson, 177 So. 528, we held that, while generally an injured person has the duty to use reasonable care, and to make reasonable effort to prevent or minimize the consequence of the wrong or injury, the rule is one of reason and that, where funds are necessary to meet the situation and the injured person is without the funds, he is excused from the effort.

The next contention is that appellee unnecessarily and unreasonably increased the danger of injury by undertaking the trip from Knight's to her parents' home by starting out in the middle or heat of the day instead of waiting until later in the afternoon. This point as to the reasonableness of her conduct under all the facts and circumstances was submitted to the jury, under a separate instruction, given at the request of appellant and directed specifically to the point, and we are un-

able to say that the jury was not warranted in reaching the conclusion which they did upon this issue.

Appellant as its third, and perhaps main, contention argues that the court was in error in allowing to go to the jury for their consideration the testimony that appellee suffered a heatstroke, spoken of by appellant as a sunstroke. Appellant says that this was an eventuality which was not reasonably foreseeable by it, and that in law such a happening must be designated as an accident. Appellant cites many cases from other jurisdiction which apparently sustain the contention. The books abound in cases dealing with proximate cause; almost anything may be found on the subject. As said by this court in Yazoo & M. V. Railway Co. v. Smith, 103 Miss. 150, 163, 60 So. 73, 74, ''the subject of proximate cause has been vexatious to the courts.'' There is perhaps no other branch of the law wherein it is more essential, in the interpretation of judicial opinions, to have in mind the precise facts of the case to which a particular decision is directed.

We will not add to the overcrowded field of discussion on that subject, but will content ourselves with the statement of succinct principles, which we think are obviously applicable to the facts here in hand. The rule is settled in this state that, when an act or omission is negligent, it is not necessary, in order to render it the proximate cause, that the actor could or might have foreseen the particular consequence or precise form of the injury, if by the exercise of reasonable care he might have foreseen or anticipated that some injury might result. Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 332, 54 So. 890. When the conduct of the actor was negligent and he could or should have foreseen that some harm would come to another as a result thereof, then the two following statements of established principle come into play: ''If the actor's conduct is a substantial factor in bringing about harm to an-

other, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Section 435, Restatement Torts. "The negligent actor may be liable for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct." Section 461, Restatement Torts.

Here a woman, three months advanced in pregnancy and at a period when above all she should not have been subjected to any such hardship, was put down near noon on a blistering hot day in August nearly three miles beyond her station at which latter there had been a conveyance to meet her, and with an infant in arms and two other small children and with baggage, and when and where the negligent actor knew or should have known that she would or might have no means to get to her ultimate destination and would suffer thereby in her efforts to extricate herself from her unfortunate situation. It is immaterial, therefore, that the actor did not foresee the full extent of her injuries, which resulted from and in an unbroken chain of natural and actual sequence from the time she left Knight's until she reached her parents' home. The principles which we are applying here are those the court had in mind in Louisville, N. O. & T. Railroad Co. v. Mask, 64 Miss. 738, 2 So. 360, and Yazoo & M. V. Railroad Co. v. Hardie, 106 Miss. 436, 64 So. 1, which although not precisely similar upon the facts, are yet so close in analogy that we might well have pointed to them, without more, for an affirmance of the present judgment. See, also, Illinois Cent. Railroad Co. v. Thomas, 109 Miss. 536, 68 So. 773, and Terry v. Railroad Co., 103 Miss. 679, 60 So. 729, 44 L. R. A., N. S., 1069.

Vigorous attack is made by appellant upon the instructions granted at the request of appellee. That these

instructions could have been more accurately drawn and that they contain minor or technical errors must be admitted. But this may be said of the instructions in a large percentage of the circuit court cases that come here for review. When all the instructions are read together, they seem to us to furnish a fairly correct statement of the principles of law governing the case; and we think that the occasional inaccuracies of language could hardly have misled a jury of good intelligence and sound judgment as we must presume the members of the jury to have been. The instructions which were refused were properly refused.

Appellant insists finally that the verdict of $1,925 is excessive. For obvious reasons, this court has been cautious in the matter of allowing large verdicts to stand in cases where passengers have been put off at the wrong station or have been carried beyond their station. Appellant cites six comparatively recent cases wherein this court has reduced the award in such actions, and in none of these was the award for as much as $2,000. But in the case, Yazoo & M. V. R. Co. v. Hardie, supra, where the injury was certainly no greater than here, the court refused to disturb a verdict of $5,000. In view of the testimony of the physician in this case, we have concluded that we cannot interfere with the amount allowed in this verdict.

Affirmed.