893 So.2d 252 (2004)
Larry LAKE, Jr. and Jamie Lake, A Minor, By His Father and Next Friend, Larry Lake, Jr., Appellants,
v.
Mr. or Mrs. Charles GAUTREAUX, Father, Mother and Natural Guardians of Jonathan S. Gautreaux, A Minor, and Jonathan S. Gautreaux, Appellees.
No. 2003-CA-00801-COA.
Court of Appeals of Mississippi.
November 9, 2004.
Rehearing Denied February 8, 2005.
*253 Thomas J. Lowe, Jr., Jackson, Peter K. Smith, attorneys for appellants.
Jan F. Gadow, H. Gray Laird, Jamie Deon Travis, Ridgeland, attorneys for appellees.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
MYERS, J., for the Court.
¶ 1. On September 24, 1997, Larry Lake, Jr. and his son, Jamie Lake, were involved in a two car collision in Clinton, Mississippi, with Jonathan Gautreaux. The Lakes were waiting at a stoplight when their vehicle was rear-ended by Gautreaux. As a result of this accident, the Lakes suffered actual damages in excess of $11,000. The Lakes filed suit on July 21, 1999, in the First Judicial District of the Hinds County Circuit Court seeking compensatory and punitive damages. On July 18, 2002, the Lakes's case went to trial where the jury returned a verdict of $6,091.14. The trial court entered an additur of $3,000 to the verdict, for a total of $9,091.14. Aggrieved by this result, Lake appeals raising the following two issues:
I. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION D-4.
II. WHETHER THE ADDITUR OF $3,000 WAS ADEQUATE.
¶ 2. Finding that the trial court erred in its granting of jury instruction D-4, we reverse and remand for a new trial on the issue of damages.

STATEMENT OF FACTS
¶ 3. On September 24, 1997, in Clinton, Mississippi, Larry Lake, Jr. was accompanied by his son, Jamie Lake, in his automobile. The Lakes were waiting at a stoplight when their vehicle was rear-ended by Jonathan Gautreaux, a high school student, who was driving his family's pickup truck. Larry Lake then pulled his vehicle into a restaurant parking lot where he telephoned his fiancee and her mother to inform them of the accident. After making this call, Larry Lake then sat on the floor underneath the telephone because of dizziness, to wait for the arrival of an ambulance. When the ambulance arrived, the Lakes were taken to the hospital where they were examined and x-rayed. The x-rays revealed no broken bones or other apparent injuries so the Lakes were given some pain medication and released.
¶ 4. Though Larry Lake's visit to the hospital did not reveal any injuries, the *254 next day he began feeling the effects of the accident and met with his fiancee's doctor, Dr. David B. Wheat. Wheat prescribed physical therapy, which Lake was unable to complete long-term because of the expense and a lack of medical insurance. Lake attempted to resume his normal life by returning to work but was unable to perform his work at the level prior to the accident. Lake worked for Kelly Drywall in Jackson, Mississippi and was only able to perform the required work in two to three hour intervals. Lake then returned to Dr. Wheat who ordered an MRI as well as prescribing additional physical therapy and advising Lake to take additional time off work. Unable to afford physical therapy and no longer able to pay his bills, Lake borrowed approximately $1,500 from his family and friends and moved back to Clarksdale, Mississippi.
¶ 5. In Clarksdale, Lake was still without money and unable to afford the physical therapy sessions as prescribed by Dr. Wheat. He then started work with Waste Management washing trucks. Lake was later promoted as a repairman of the trucks and at that point was making one-dollar per hour less than he did at his prior job with Kelly Drywall. After sixteen months of employment with Waste Management, Lake went to work for White Construction at the same hourly rate as he received during his tenure with Kelly Drywall.
¶ 6. From the time of the accident up to trial, Lake was experiencing pain and numbness in his right hand and right side of his body. He stated at trial that he has to try to conduct his day to day operations with his left arm and has experienced trouble sleeping due to pain.
¶ 7. Lake filed suit in the Circuit Court of the First Judicial District of Hinds County, Mississippi on July 21, 1999, seeking compensatory damages and punitive damages for the accident. The case went to trial on July 18, 2002. At trial, Lake alleged that he suffered $11,929.99 in actual damages. These damages being categorized as $8,448 in lost wages and $3,481.99 in medical expenses. After the presentation of the case, the jury was given instructions on how they should form their verdict. The jury returned with a verdict of $6,091.14. The trial court then entered an additur of $3,000 towards the jury verdict. Aggrieved by the court's granting of jury instruction D-4 and the result, Lake appeals the decision of the trial court.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION D-4.

STANDARD OF REVIEW
¶ 8. It is well established in Mississippi that on appeal, this Court does not review jury instructions individually. Instead, jury instructions are read as a whole to determine if the jury was properly instructed. Defects in specific instructions do not require reversal where all instructions taken as a whole fairly, but not perfectly, announce the applicable rules of law. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse. Boone v. Wal-Mart Stores, Inc., 680 So.2d 844, 845 (Miss.1996).

DISCUSSION
¶ 9. Lake contends that jury instruction D-4 was not a proper instruction of law in determining this case. The instruction as given read:
You are instructed that a Plaintiff is under a duty after suffering harm, if any, to exercise due care and to take reasonable steps to avoid or diminish the *255 damages resulting from that harm. You are further instructed that a Plaintiff is not entitled to recover damages for the harm he could have avoided by the use of due care, nor for the harm which proximately resulted from his own conduct, if any, which contributed to his damages.
If you find from a preponderance of the evidence in this case that Larry Lake, Jr. was instructed by his physician to take certain steps in an attempt to treat the medical conditions which he, Larry Lake, Jr., claims resulted from the accident on September 24, 1997, and if you further find that Larry Lake, Jr. failed to follow his physician's instructions in that regard, and if you further find that such failure on the part of Larry Lake, Jr., if any, caused him to endure certain medical conditions or incur certain bills that he otherwise would have avoided by following his physician's instructions, then you are instructed that Larry Lake, Jr. is not entitled to recover damages for those medical conditions and/or medical bills that he would have avoided by following his physician's instructions.
¶ 10. This instruction is identical to instruction D-3, as given in the case of Herring v. Poirrier, 797 So.2d 797, 806(¶ 26) (Miss.2000). As stated in Perry v. State, "[J]ury instructions are not given unless there is an evidentiary basis in the record for such." Perry v. State, 637 So.2d 871, 877 (Miss.1994) (quoting Fairchild v. State, 459 So.2d 793, 800 (Miss.1984)).
¶ 11. Gautreaux contends that the Herring case is controlling; we disagree. In Herring, 797 So.2d at 807 (¶¶ 30-32), the court held that an individual who fails to mitigate his or her damages by ignoring a doctor's orders, may not recover the full extent of his or her damages. Much like the case sub judice, Herring was involved in a car accident in which he was rear-ended by Poirrier at a stop light. Herring's vehicle was then struck a second time, as a car driven by Raymond Jefferson struck Poirrier, causing it to strike Herring once more. At the time of the accident, Herring did not feel any effect from the wreck. Two weeks after the accident, Herring began to experience pain in his lower back, left hip, and left leg. Herring's case proceeded to trial on the issue of damages, as in the case presently before this Court. At trial, the issue of mitigation of damages played a key role in the outcome of the decision. It was determined that Herring had failed to mitigate his damages. When Herring initially began experiencing complications, he sought treatment for his injuries. Herring's physician prescribed physical therapy sessions as well as an MRI. When Herring returned to his physician some time later, still feeling the effects of his injuries, a percutaneous diskectomy was performed to alleviate the pain Herring was experiencing in his right leg. At the time the surgery was conducted, Herring's physician was unaware that Herring had failed to follow the previously prescribed physical therapy treatments. Herring's physician further testified that had he been aware of Herring's failure to comply with his orders, he would not have conducted the surgery. The jury then determined that Herring had failed to mitigate his damages, by not following his physicians prescribed treatment, and returned a verdict of $0 in favor of Herring. Id.
¶ 12. Gautreaux contends that this Court is obliged to follow the holding set forth in Herring. While at first glance the cases appear very similar, there is one major distinguishing factor between the two, one which Mississippi's law has held to trump the duty to mitigate damages. The exception to the rule that one has a *256 duty to mitigate his or her damages is when the "plaintiff's lack of funds to meet the situation presented may excuse efforts to lessen the injury." North American Accident Ins. Co. v. Henderson, 180 Miss. 395, 404, 177 So. 528, 530 (1937) (quoting 17 C.J. pp. 771, 772 § 97). The Mississippi Supreme Court has long held that
while generally an injured person has the duty to use reasonable care, and to make reasonable effort to prevent or minimize the consequences of the wrong or injury, the rule is one of reason and that, where funds are necessary to meet the situation and the injured person is without the funds, he is excused from the effort.
Tri-State Transit Co. v. Martin, 181 Miss. 388, 396, 179 So. 349, 350 (1938).
¶ 13. Gautreaux maintains that Lake was able to raise the funds necessary to continue with his physical therapy treatment since he was previously able to borrow $1,500 from family and friends to move back to Clarksdale, Mississippi. At trial, Gautreaux's attorney questioned Lake about the cost of office visits to his treating physician, not the cost of physical therapy treatment which is at the heart of this matter, and his ability to pay for any visits. Lake repeated multiple times throughout the trial that he could not afford to pay for additional medical treatment. Lake was off work due to his injuries and without medical insurance. He had no income and was forced to borrow money to pay the bills he had incurred prior to moving back to Clarksdale. Lake simply did not have the funds available to him to spend $40 per office visit to a physician and $60 per one-half hour of physical therapy, which would require numerous treatments. Lake relied on aspirin to relieve the muscle pain rather than the $2 per day muscle relaxers available to him. To state that Lake is required to mitigate his damages in light of his inability to pay the cost of treatment would be contrary to long standing case law in this state.
¶ 14. A second distinguishing factor between the Herring decision and the case presently before this Court is the issue of prescriptions made by the treating physician, versus recommendations made by a physician retained to give an evaluation to determine the amount of permanent physical impairment. Gautreaux argues that a physician, Dr. Robert P. Christopher, who was retained as an expert witness to give testimony as to Lake's permanent physical impairment, should have offered his advice for treatment in the form of a required prescription. Interestingly, Gautreaux has taken opposing positions as to how the court should view the testimony of Dr. Christopher. Gautreaux first asserted to the trial court that "[n]one of Larry Lake, Jr.'s physicians have testified that within a reasonable degree of medical probability Larry Lake, Jr. will need physical therapy in the future." On the other hand, Gautreaux now asserts to this Court that "the evidence reveals that Lake was instructed by his physician to undergo additional physical therapy to treat the neck pain which Lake claims resulted from the subject accident, ...." Both statements refer to the June 23, 1999 testimony of Dr. Christopher which indicates that at a minimum, five years of physical therapy would be proper to reduce Lake's pain. Dr. Christopher's June 23, 1999 statement is as follows:
Q. What will be his needs in the future if any, Doctor?
A. Well, Mr. Lake asked me about that and I told him that he would need pain medication and muscle relaxer medication at least for the next five years. You know, I'm not going to say he'll need it for life because I don't know. *257 There's no test that we can do that will really accurately predict that. He may need it for longer than that but at least I know that given his current state, that is, at least when I saw him he would need it for at least the next five years. I said if he has flare-ups and his neck pain really is bothering him he may also need some additional physical therapy, as much as fifteen treatments in a year. Typically, these are done three times a week. He might need up to four, five weeks of therapy if the medication isn't successful until relieving his symptoms. That again would be for the next five years, but could be longer. Someone would have to evaluate him periodically to make that determination.
¶ 15. Interestingly, the first assertion by Gautreaux was made within two years of Dr. Christopher making the above quoted statement. Gautreaux now chooses to rely upon his completely opposite second assertion, presumably because the former position is against Gautreaux's interests at this juncture.
¶ 16. As stated above, a key determination to be made in deciding this case is made by delineating between what is required by a treating physician and what is recommended by a physician retained for purposes of evaluation. Dr. Christopher's statements were those of advice, or recommendations as to what his prescriptions would be, had he been treating Lake. The only prescriptions which Lake received were given by Dr. Wheat, his treating physician.
¶ 17. In the Herring decision, upon which Gautreaux heavily relies, it is stated that "Dr. Danielson prescribed nine sessions of physical therapy." Herring, 797 So.2d at 806-07(¶ 28) (emphasis added). Further, Herring states, "Dr. Danielson again prescribed physical therapy in January 1996 and that he did not attend the sessions." Id. (emphasis added). It is further stated "Dr. Danielson prescribed physical therapy a third time in February 1998 and that Herring again told Dr. Danielson he could not attend the sessions." Id. (emphasis added). The Herring decision continues to use the word "prescribed" or "prescribe" throughout. Dr. Christopher's statement does not prescribe a course of action for Lake to follow but were simply his factual findings and statements regarding what his recommendations would be if he was employed as Lake's treating physician.
¶ 18. If Lake had incurred additional costs for attending physical therapy sessions that were not prescribed, then we dare say that Gautreaux would argue that Lake failed to mitigate damages, in that event for attending the physical therapy sessions. Thus, given the nature of this instruction, Lake was placed in a no-win scenario: if he does not go to physical therapy, then he has failed to mitigate; but if he does go to physical therapy, then he has still failed to mitigate by incurring costs that were not prescribed.
¶ 19. Thus, the mitigation instruction D-4 could not have had any other result than to confuse the jury and prejudice Lake's case. Given the anomalous result reached by the jury, we find that this erroneous instruction produced just such a result, and that the jury was not fairly and adequately instructed.
¶ 20. For the foregoing reasons, we reverse the decision of the trial court and remand this case for a new trial on the issue of damages.

II. WHETHER THE ADDITUR OF $3,000 WAS ADEQUATE.
¶ 21. As our analysis of issue one is dispositive of this issue, discussion of this issue is not necessary.
*258 ¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL ON DAMAGES. THE APPELLEES ARE ASSESSED ALL COSTS OF THIS APPEAL.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.