906 So.2d 57 (2004)
Jane DOE, By and Through her Natural Mother and Next Friend, B.J. DOE, Appellant,
v.
NORTH PANOLA SCHOOL DISTRICT; Bonnie Smith, Individually and in Her Official Capacity as Superintendent of North Panola School District; Jesse Orange, Individually and in His Official Capacity as Principal of Como Middle School; and Finis Sanders, Individually and in His Official Capacity as Teacher.
No. 2003-CA-01040-COA.
Court of Appeals of Mississippi.
November 30, 2004.
*59 David G. Hill, Ralph Stewart Guernsey, David L. Minyard, Oxford, attorneys for appellant.
Timothy Michael Peeples, Wilton V. Byars, Oxford, attorneys for appellees.
Before BRIDGES and LEE, P.JJ., CHANDLER and GRIFFIS, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. Jane Doe[1] filed suit by and through her mother, B.J. Doe, in the Circuit Court of Panola County, Mississippi, against the North Panola School District (NPSD); Bonnie Smith, individually and in her official capacity as superintendent of NPSD; Jesse Orange, individually and in his official capacity as principal of Como Middle School; and Finis Sanders, individually and in his official capacity as Jane's teacher. The suit alleged that the defendants improperly supervised the students at Como Middle School and allowed Jane to be repeatedly sexually assaulted by her fellow students. The claims against the defendants in their individual capacities were later dismissed with prejudice pursuant to the Mississippi Tort Claims Act.
¶ 2. A trial on the matter was heard without a jury beginning September 9, 2002. The trial concluded after three days, and a final judgment in favor of Jane Doe was entered on March 12, 2003. The trial judge awarded Jane damages in the amount of $20,197.03, which included $101.20 in past medical bills at North Oak Medical Center, $995.83 in past medical bills at Aaron Henry Clinic, $4,100 in past therapy bills at Oxford Play Therapy Training Institute (OPTTI), and $15,000 for future therapy for three years at OPTTI.
¶ 3. Following the trial judge's ruling, Jane moved for an additur or, in the alternative, a new trial as to damages only. The trial judge denied Jane's post-trial motions and, thus, Jane now appeals to this Court asserting the following: (1) the trial judge erred in declining to consider Jane's pre-existing condition in awarding *60 damages; (2) the trial judge erred as a matter of law in awarding nothing for pain and suffering despite the court's finding of over $20,000 in actual past, present, and future medical and psychological expenses; (3) the trial judge erred in considering that Jane was covered by Medicaid as a part of the court's award of damages; (4) the trial judge misapprehended pertinent facts and opinion evidence from both parties and (5) the trial judge erred in refusing Jane's motion for additur as the awarding of zero dollars for pain and suffering, in a case where a disabled eleven year old girl was repeatedly subjected to unwanted sex, was shocking to the conscience.

FACTS
¶ 4. Jane Doe was born June 15, 1989, as an able-bodied child. However, during her first year of life, Jane contracted meningitis which left her moderately retarded. During the 2000-01 school year, Jane was enrolled as a special education student at Como Middle School, one of the schools within the NPSD. Based upon her test scores, Jane was placed in the "educably mentally retarded" range. By April 2001, Jane was the only girl of five students in Finis Sanders's fourth period special education math class. All of the students in this class experienced some degree of mental disability.
¶ 5. Sanders's fourth period class lasted from 10:40 a.m. until 11:30 a.m. with a five minute break between classes. Due to previous problems with students, the school had adopted a policy which provided that students were to be adequately supervised between the breaks. Every teacher was assigned to designated areas of the campus in order insure orderly transition between classes. Sanders was assigned to bathroom duty at the boys' bathroom located approximately fifty feet from his classroom. Leroy Richardson also taught at Como and his room was across the hall from Sanders's classroom. Richardson was assigned to hall duty during which he stood directly between the door of his classroom and Sanders's classroom.
¶ 6. Sanders's classroom contained two bookshelves located three feet from the back wall, which created a space hidden from view from the front of the classroom. There was carpet on the floor behind the bookshelves.
¶ 7. In late April, 2001, rumors surfaced concerning recent sexual activity between Jane and two other boys, Ronnie and Andre, in the back of Sanders's classroom during the five minute break between classes. Both Ronnie and Andre stated that the other had engaged in sexual intercourse with Jane while the other acted as "look out" for any approaching teacher. Although Andre and Ronnie's testimony was at times contradictory, it was evident that both of the boys had been involved in some type of sexual contact with Jane. After discovery of the sexual assault, Jane was examined by physicians on two separate occasions. During the first exam, Jane was uncooperative and the exam could not be completed. During the second exam a few days later, Jane was again uncooperative and the exam could not be completed. However, Dr. Patricia Amadio, the physician who conducted the second exam, testified that she saw no tears, blood, or obvious trauma to Jane and that, after checking for venereal disease, all lab results were negative.

STANDARD OF REVIEW
¶ 8. Miss.Code Ann. § 11-1-55 (Rev.2002) provides:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur *61 or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence....
¶ 9. When this Court reviews whether the trial judge erred in denying a motion for additur we are limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742(¶ 5) (Miss.1999). The focus at the appellate level is whether the trial judge abused his discretion in denying the motion for additur, not upon the jury's action in awarding damages. McNair Transport, Inc. v. Crosby, 375 So.2d 985, 986 (Miss.1979). The burden of proving injury and other damages falls to the party seeking the additur. Id. We must view the evidence in the light most favorable to the party against whom the additur is sought and must give him the benefit of all favorable inferences that may be reasonably drawn therefrom. Id. "Awards set by jury are not merely advisory and generally will not be `set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Maddox, 738 So.2d at 743 (¶ 5) (citing Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 945 (Miss.1992)). "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Id.
¶ 10. Furthermore, in cases where circuit court judges try cases without a jury, the same standard of review applies as if the judge were a chancellor. A circuit court judge's findings are "safe on appeal where they are supported by substantial, credible and reasonable evidence." Maldonado v. Kelly, 768 So.2d 906(¶ 4) (Miss.2000).

DISCUSSION OF ISSUES

I. DID THE TRIAL JUDGE ERR IN DECLINING TO CONSIDER JANE'S PRE-EXISTING CONDITION IN AWARDING DAMAGES?
¶ 11. In her first issue, Jane asserts that the trial judge erred in declining to consider her pre-existing condition in awarding damages. Jane contends that her pre-existing retardation was aggravated by the sexual assaults. Furthermore, Jane argues that the trial judge misapplied the law on pre-existing conditions. Jane relies specifically on this sentence from the trial judge's opinion in which she stated that "[t]he Court finds that the Plaintiff is only entitled to those damages which directly flow from the assault, rather than any damages related to her pre-existing mental condition."
¶ 12. "One who injures another suffering from a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-existing condition and the damage caused by the defendant." Brake v. Speed, 605 So.2d 28, 33-34 (Miss.1992). However, the rule on pre-existing injuries is "generally limited to pre-existing physical  not mentalconditions." Encyclopedia of Miss. Law, Vol. 4, § 25:42 (2001) (see Tri-State Transit Co. v. Martin, 181 Miss. 388, 398, 179 So. 349, 351 (Miss.1938) (negligent actor can be liable for heightened harm to plaintiff with physical condition rendering harm greater to him than average plaintiff)). We fail to see any error on the part of the trial judge in finding that Jane needed therapy for the sexual assault rather than for her mental retardation.

II. DID THE TRIAL JUDGE ERR AS A MATTER OF LAW IN AWARDING *62 NOTHING FOR PAIN AND SUFFERING DESPITE THE COURT'S FINDING OF OVER $20,000 IN ACTUAL PAST, PRESENT, AND FUTURE MEDICAL AND PSYCHOLOGICAL EXPENSES?
¶ 13. In her second issue, Jane asserts that the trial judge erred in awarding her nothing for pain and suffering despite the court's finding of over $20,000 in actual past, present, and future medical and psychological expenses. To support her argument Jane relies upon Rodgers v. Pascagoula Public School Dist., 611 So.2d 942 (Miss.1992), where the supreme court stated "[a] jury verdict awarding damages for medical expenses alone is against the overwhelming weight of the evidence. Rodgers put on proof that his damages included not only medical expenses but also some pain and suffering." Id. at 945.
¶ 14. In Rodgers, the supreme court granted the additur as requested by Rodgers because it found that Rodgers put on proof of pain and suffering. Rodgers testified as to his experience during the automobile collision in which he sustained head injuries. Furthermore, testimony at trial showed that Rodgers was treated by at least seven doctors and was prescribed pain medication on at least six occasions.
¶ 15. In the case sub judice the trial judge did find that "something of a sexual nature occurred" between Jane and the two other boys in the back of Sanders's classroom. However, the trial judge also found that it was impossible to determine Jane's level of stress due to her inability to communicate clearly and, as a result, found insufficient evidence to support an award for pain and suffering. Dr. Marilyn Snow, an expert witness for the plaintiff who also monitors Jane's play therapy, testified that Jane's play activities indicated that she had post traumatic stress syndrome. During play therapy, Jane would on occasion dance suggestively and act out sexual scenes with two dolls, which Dr. Snow claimed was a result of the sexual assault. However, on cross-examination, Dr. Snow stated that Jane said she was dancing like Michael Jackson and that it was possible Jane was influenced from watching music videos. Dr. Snow further testified that she was neither a psychologist nor a psychiatrist, had never been a consultant with or on staff of a mental retardation facility, and only had two patients in previous play therapy sessions suffering from mental retardation.
¶ 16. Dr. Trudy Porter conducted the forensic interview of Jane and determined that Jane had been sexually assaulted. However, Dr. Porter did not testify as to Jane's mental state since the incident. Dr. Wood Hiatt testified that although he believed something sexual had occurred to Jane at school, he found no evidence of emotional damage or post traumatic stress disorder. As there was sufficient evidence to support the trial judge's findings, we cannot find that the trial judge abused her discretion in failing to award damages for pain and suffering.

III. DID THE TRIAL JUDGE ERR IN CONSIDERING THAT JANE WAS COVERED BY MEDICAID AS PART OF THE COURT'S AWARD OF DAMAGES?
¶ 17. In her third issue, Jane contends that the trial judge improperly relied on the fact that Jane qualified for Medicaid and Social Security benefits in denying her request to be institutionalized on a permanent basis at North Mississippi Regional Center at NPSD's expense. Specifically, Jane argues that the trial judge misapplied the collateral source rule. The collateral source rule states that a tortfeasor cannot mitigate its damages by factoring in compensation the plaintiff received from a collateral source other than the *63 tortfeasor, such as insurance. Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611(¶ 23) (Miss.2001) (citing Coker v. Five-Two Taxi Service, 211 Miss. 820, 826, 52 So.2d 356, 357 (1951)). The court in Brandon also held the rule to apply to Medicaid payments. Brandon, 809 So.2d at 618 (¶ 23).
¶ 18. In her opinion the trial judge stated the following:
They [Jane] offered testimony that the cost of the program at NMRC is $225.00 per day and that Jane has a life expectancy of 63.4 years, and request an award of $5,206,725.00 for permanent placement at NMRC. The evidence is uncontradicted that Jane qualified for admission to NMRC before these assaults and that she continued to qualify for admission to NMRC after the sexual assault. Jane also qualified for Medicaid and SSI, which would have covered her expenses at NMRC, before and after the assault. Both Dr. Hiatt, North Panola's expert, and Dr. Antonow, the plaintiff's expert, testified that the public school was an appropriate placement for Jane and that admission to NMRC would be a "last resort." The Court finds that there is insufficient evidence to show that Jane should be admitted to NMRC as a result of the incident which brought about this Complaint. The Court rejects this as a proper measure of damages.
¶ 19. Jane wanted permanent placement at NMRC and wanted NPSD to pay for it. According to the record, Jane was eligible for admittance into NMRC based on her test scores both prior to and after the incident at school. During the trial, NPSD determined that Jane had been receiving Medicaid and SSI benefits. At no time did Jane object to this questioning. In earlier testimony, Jane elicited information from her own witness concerning the different daily pay rates between a private pay resident and a Medicaid patient. More than one expert testified that they felt it best for Jane to stay in public school for as long as possible. In the trial judge's opinion, it is clear that she agreed that it would be best for Jane to stay in public school. Furthermore, we do not find that the chancellor relied upon Jane's Medicaid and SSI payments in determining that it would be best for her to remain in school, thus ultimately denying her damages for permanent placement in NMRC. This issue is without merit.

IV. DID THE TRIAL JUDGE MISAPPREHEND PERTINENT FACT AND OPINION EVIDENCE FROM BOTH PARTIES?
¶ 20. In her fourth issue, Jane argues that the trial judge misapprehended pertinent fact and opinion evidence from both parties. However, Jane's argument consists of disagreements with each fact found by the trial judge. Rather than go through each finding Jane disagrees with, in reviewing the record, we find that the trial judge had ample evidence to support her finding of damages. The trial judge's opinion was comprehensive and addressed all the issues and facts pertinent to the case. The trial judge, sitting as a jury, had the opportunity to view the witnesses' demeanor and hear their testimony. We find no merit to this issue.

V. DID THE TRIAL JUDGE ERR IN DENYING JANE'S MOTION FOR AN ADDITUR?
¶ 21. In her last issue Jane contends that the trial judge erred in denying her motion for an additur. Specifically, Jane claims that a verdict of zero for pain and suffering in a case where an eleven year old disabled girl was repeatedly subject to unwanted sex by two different boys was shocking to the conscience. As this issue is just a rephrasing of Jane's second issue *64 and we fully discussed the issue of pain and suffering, we find this issue to be without merit.
¶ 22. THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.
NOTES
[1] Given the nature of this case, we continue to refer to the minor child as "Jane Doe." Furthermore, Jane's family members and other minor children involved will be referred to by first name only.