PORTER ET UX. *v.* NESMITH ET AL.

[87 South. 5, No. 21546.]

1. TRIALS. *Verdict should not be directed when evidence if believed warrants judgment for plaintiff.*

A jury should not be directed to return a verdict for the defendant when there is evidence which, if believed by them to be true, would warrant a verdict for the plaintiff.

2. HIGHWAYS. *Driver of automobile must keep lookout for other travelers.*

The driver of an automobile should keep a lookout for other travelers on the road, and his failure so to do resulting in injury to another traveler is negligence.

APPEAL from circuit court of Copiah county.

HON: D. M. MILLER, Judge.

Action by D. E. Porter and wife against B. B. Nesmith and others. Judgment for defendants on a directed verdict, and plaintiffs appeal. Reversed and remanded.

*R. H. & B. H. Miller, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellants.

Where the defendants by their negligence produced a state of affairs from which an injury results they are liable therefor and that is exactly this case. The old English Squib case is applicable and illustrative. There the squib was thrown at one man, who knocked it off in the direction of another, who in turn knocked it in the direction of a third person, the plaintiff, the squib striking plaintiff in the eye and seriously damaging him. He sued the man who first threw the squib and recovered. *Scott* v. *Shepherd,* 2 Blackstone Reports, 892, 1 Smith's Leading Cases (9 Am. Ed.) 737.

Our statute, Hemingway's Code, p. 5775, provides that:. "No person shall operate a motor vehicle on a public highway or street, avenue or ally of any city, town or village in this state at greater rate of speed than is reasonable and proper, having due regard to the traffic and use of the highway, or so as to endanger the life or limb of any person or the safety of any property. The concluding parts of the section do not affect the sentences above quoted.

It was, we submit, undoubtedly a question of fact, that should have been submitted to the jury in this case, whether defendants were violating this statute when their motor truck struck and killed plaintiff's son. We submit that defendants violated the statute and were guilty of gross negligence when the driver of the truck, after crossing a street with his eyes upon objects behind him, entered upon the narrow passageway between the parks without giving warning. And if Russell did so at any rate of

speed about which normal minds might differ as to whether it was reasonable or unreasonable, proper or improper under the circumstances and facts of this case, then, at least, a question of fact was presented which should have been submitted to the jury. It seems to us that to enter the narrow passage at any speed would be unreasonable and improper unless it was so slow as to enable the driver to have absolute control of the vehicle and prevent the striking of persons coming into the driveway from the path across the corner of the north park. This too was a question for the jury.

Again, our statute, Hemingway's Code, p. 5777, provides, that auto trucks "upon approaching a crossing of intersecting highways" including streets, must do so "at a speed not greater than is reasonable and proper, having due regard to the traffic then on such highway and the safety of the public." The narrow driveway between the parks intersected the street called West Railroad avenue and when defendants truck approached the intersection did it do so at a rate of speed greater than was reasonable and proper having due regard to the traffic and the safety of the public? It is no answer, certainly not a conclusive one, to say the truck was moving at a speed not exceeding six miles an hour. The question is, did the traffic and the safety of the public require a lesser speed at the time than that of the truck which took human life? This, we submit, was a question for the jury and not for the court to decide.

In *Ulmer* v. *Pistole,* 76 So. 522, this court recently decided that it is negligent for an automobile driver to fail to look both ways at a street intersection. The junction between the passageway between the parks and West Railroad avenue was an intersection, and the junction between the path across north park and said passageway was also an intersection of much traveled roads. The eloquent words used on several occasions by this court, are especially applicable to the case at bar.

So many questions are intergregated, usually into the solution of the question of negligence; it is so necessary to carefully examine all the circumstances making up the situation in each case, that it must be a rare case of negligence which the court should take from the jury. *Stevens* v. *Yazoo, etc., R. Co.,* 81 Miss. 195; *Yazoo, etc., R. Co.* v. *Humphreys,* 83 Miss. 721; *Bell* v. *Southern, etc., R. Co.,* 87 Miss. 234; *Laurel* v. *Mobile, etc., R. Co.,* 87 Miss. 675; *Allen* v. *Yazoo, etc., R. Co.,* 88 Miss. 25.

*Myron S. McNeil,* for appellee.

Instead of the case of *Setoo* v. *Shepherd,* 2 Blackstone Reports, 892, being an authority for the appellants in this case, we insist that it is a case in direct point for the appellees. Raleigh Edgar Porter drove his bicycle along this obscure path and entered suddenly upon the street. The appellee, Russell, upon discovering the presence of Raleigh Edgar Porter immediately turned his vehicle to the right and away from the boy. Now suppose that either of the two men standing on the right had been killed or damaged by this vehicle driven by the appellee, Russell, who would have been liable, and to whom would the blame have been attributable? No case is more illustrative than the famous squib case referred to by counsel. "Where one threw the squib, who knocked it off in the direction of another, etc." Who threw the squib in this case? The answer is manifest, the unfortunate little Raleigh Edgar Porter.

The next point discussed by counsel for appellants is presented on page 6 of their brief. They state: "In the case at bar the death of plaintiff's son was a direct and proximate result of the driving of the truck without keeping a lookout across a street, intending to enter the narrow driveway between the parks, the driver at the time not looking ahead of him, but having his eyes upon the rear of the truck and the persons seeking to get up on it. In so doing he went too far to the south and thereby en-

dangered a man, and in efforts to prevent injury to him, the truck was violently speeded across to the left side of the driveway and the boy was killed."

We contend that, even if it was true that Russell was driving his truck on the left of the middle of the road, that this was not a violation of the rules of the road, unless he was meeting someone in the road; section 7092 of the Hemingway Code.

The testimony of all the witnesses shows that at the time of the accident, the appellee, Russell was looking in front and in the direction in which he was driving, and is absolutely undisputed upon this subject.

The next question discussed in counsel's brief is: "That Russell was guilty of negligence in driving along the eighteen foot passageway without keeping a lookout for persons passing along the path, coming into the driveway, etc." That is to say, whether or not it was the duty of Russell under the circumstances in this case to have anticipated a boy riding a bicycle across this path and suddenly entering the street in front of him. The record shows that the path was frequently used by pedestrians, but seldom, if at all used by persons riding bicycles.

Counsel for appellants further contend that even if the truck was being driven at a lawful and cautious rate of speed, which must be conceded, and even if Russell was looking down the alley-way towards the south end of the depot at the time of the unfortunate accident, yet notwithstanding the fact that Russell himself, who was placed upon the stand by the plaintiff in the court below, testified that he did not see him and the fact stands absolutely undisputed in the record.

The case of *Ulmer* v. *Pistole,* 79 So. 522, cited by counsel is not authority on this proposition. This decision is not only sound in law but in principle. However, it was based upon a very different state of facts from the facts in this record. Is it possible that upon passing every path leading into a street it is the duty of the operator of a motor vehicle to take his eyes off of the road and look

down this path to see whether or not anyone is about to cross the way? This is the question in this case, and the sole question.

We insist that if a person was driving along a public highway or street and should drive into some other vehicle or a pedestrian and cause damage, and should undertake to give as an excuse that he was looking off the street and down a path which intersected the street for persons who might be traveling thereon and therefore did not see the person or the vehicle, and assign this as a defense, this would be no defense for causing the damage and no court would hesitate to so hold.

It is contended by counsel for appellants that this case should have gone to the jury on the testimony of one E. C. Garland. Mr. Garland testified that immediately after the accident he went to the scene and Russell told him that the brakes of his truck would not work, and that this was the reason why the accident occurred. The whole of the other evidence in the record absolutely contradicts and renders impossible that such a statement could have been made by Russell to Garland, for the reason that the whole testimony shows that immediately after the accident Russell immediately ran to Nesmith's store and there revealed to the father the unfortunate accident, in which his boy was killed, and that he was carried from this store to his home prostrated, and remained confined to his bed several days suffering from the shock. Garland did not pretend to have visited the scene until some time after the accident.

The case of *Hester* v. *Hall,* decided by the supreme court of Alabama, reported in 81 So. 361, is directly in point and is conclusive on the issue here. This unfortunate accident is to be regretted, but after a most careful examination of the entire record there is but one ultimate conclusion, and that is, that little Raleigh Edgar Porter was killed as a direct result of his own negligence and not through the fault, misfeasance or malfeasance of the oper-

ator of the truck, and we therefore submit that the judgment of the lower court should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This action was begun in the lower court by the appellants, who are husband and wife, to recover from the appellees damages for the death of their minor son, who was run over and killed by an automobile truck, the property of and being driven by a servant of the appellees. At the close of the evidence the court directed a verdict for the appellees.

In the town of Hazelhurst the Illinois Central Railroad Company's tracks run north and south. West of these tracks there is a strip of ground something less than seventy feet wide belonging to the railroad company which has been made by the company into three parks; the south park being separated from the one lying immediately north of it by an alley eighteen feet wide. West of these parks is a street eighty feet wide called West Railroad avenue, running parallel with the railroad. Fronting east on this street and practically opposite the alley between the south and middle parks is a warehouse owned by the appellees. There is a path diagonally across the southeast corner of the middle park beginning at the railroad track and entering the alley between the parks about halfway between the east and west boundaries of the parks.

The railroad company's passenger station is on the east side of its tracks directly opposite the middle park, and the major portion of the business section of the town of Hazelhurst lies southwest of the station and parks. The alley between the middle and south parks is extensively used both by vehicles and pedestrians in going from and coming to the station; the pedestrians usually crossing the southeast corner of the park in the path hereinbefore mentioned.

There are a few bushes and some shrubbery in the middle park, and, while there is some little conflict in the

evidence with reference thereto, it is clear that a person traveling this path, across the southeast corner of the park, is in plain view from the appellees' warehouse, and from any point between there and the place where the path enters the alley between the parks.

Raleigh Edgar Porter, the appellants' minor son, lived with them on the east side of the railroad tracks, and on the 1st day of March, 1919, he started from home on a bicycle to the business section of the town on an errand for his mother. He was riding with his head down, and, according to the driver of the truck, at about five miles per hour. He crossed the railroad, turned into the path which crosses the southeast corner to the middle park, and was struck and killed by an automobile truck just after turning into the alley between the parks. This truck was owned by the appellees and had just left their warehouse and was on its way to the railroad station to be loaded with freight for transportation to the warehouse. The seat of the truck was equipped with a hood.

There was testimony, the truth of which was for the determination of the jury that when the truck came out of the appellees' warehouse and was crossing West Railroad avenue to the alley between the parks, the driver was looking back through a hole in the hood of the truck, remonstrating with two boys who were attempting to ride on the truck; that because the driver was not looking to the front the truck struck the alley at its southern edge and was only prevented from running over a man who was entering the alley at that point by his being pulled from in front of the truck by a companion, and by the driver turning the truck abruptly to the left, which brought the truck to within three feet of the north side of the alley and caused it to strike the deceased just after he entered the alley from the path. The speed at which the truck was then running, according to the evidence of the driver, was about six miles per hour. The driver should have kept a lookout for pedestrians while crossing the street and entering the alley, and if he did not do this, which fact

was for the determination of the jury, and could, by so doing, have seen the deceased in sufficient time to have avoided striking him, then he was guilty of negligence, for which the appellees are responsible.   The peremptory instruction, therefore, should not have·been given.

*Reversed and remanded.*