DERRY v. GRIMES, GUARDIAN.

4-6248                                                    148 S. W. 2d 676

Opinion delivered March 17, 1941.

*Moore, Burrow & Chowning* and *W. S. Mitchell, Jr.,* for appellant.

*Kenneth C. Coffelt, Edward H. Coulter* and *Kenneth W. Coulter,* for appellee.

HUMPHREYS, J. L. H. Grimes, as guardian for his minor son, Edward, and on his own behalf as father of Edward, brought suit in the circuit court of Saline county against appellants to recover damages to his son in the sum of $15,000 for injuries received by the son and $3,000 sustained by himself on account of the expenditures for medical service and the loss of the services of his son, which injuries resulted from the alleged negligent operation of appellants' automobile. The negligence alleged in the complaint is as follows:

"That appellants were negligent in the operation of said automobile in that they failed to keep a proper lookout, or to observe where and how they were driving the same, along said highway, and in driving the same too far to the west side of said highway along which pedestrians regularly traveled, and along which appellee, Edward Grimes, was at the time traveling, and in failing to give any notice or signal by which pedestrians, and particularly appellee, Edward Grimes, might be warned of their approach, though said appellee, Edward Grimes, was in plain view of appellants."

It was further alleged in the complaint that, through the negligent operation of the automobile, appellee, Edward Grimes, received painful injuries to his right leg, back and head causing complete deafness in the right ear.

Appellants filed an answer denying the allegations of negligence or that Edward Grimes received any serious injuries on account of the collision with their automobile; and also pleaded contributory negligence as a complete defense to the causes of action.

The causes were submitted to a jury upon the pleadings, testimony introduced by appellees and appellants and instructions of the court, resulting in a verdict and judgment in favor of L. H. Grimes, as guardian of Edward Grimes, in the sum of $3,000, and a verdict in

favor of appellants against L. H. Grimes in his own right.

From the verdict and consequent judgment in favor of L. H. Grimes as guardian of Edward Grimes appellants prayed and perfected an appeal to this court, and L. H. Grimes has prayed and perfected a cross-appeal from the verdict and judgment adverse to him in his own right.

Appellants first contend for a reversal of the judgment against them on the ground that there is no substantial evidence in the record showing negligence on their part.

Appellants were driving south on the right-hand side of highway No. 35 leading from Benton to Sheridan. It was a gravel road about twenty-six feet wide where the catastrophe happened with a shoulder five or six feet wide. The shoulder extended out to a sloping ditch and toward the west was a small field frequently referred to as a large yard between the highway and the Albert J. Broadway house where the children in the neighborhood gathered to play football. A pathway was running parallel with the highway on the shoulder which turned across the ditch and ran diagonally into the playground. Fifteen or twenty children were on the playground at or about the time Edward was injured. Edward and three or four little girls about his age left the others and came down the path toward the highway. Edward and Alva Neighbors had crossed the ditch and gotten onto the shoulder of the road and started south when Mr. Broadway called to his girl to come back home. She and the other girls except Alva Neighbors started back leaving Edward and Alva on the shoulder of the road. Alva was walking behind Edward some five or six feet and stopped when Mr. Broadway called his daughter and the other little girls and watched the girls while she was in that position with her back toward the highway. She heard Edward scream and turned her head in his direction and discovered that he was lying on the shoulder supporting himself on his elbows and crying and calling for his mother.

A number of persons gathered immediately about the scene and heard Mrs. Derry, who was driving the car that collided with the boy, in explaining the occurrence say, "I didn't see the boy at all. I was looking across the field in front of the house and I just didn't see him." And she did not know she had hit him. Three of the witnesses who heard her make the statement were related to him, but a disinterested witness stated that Mrs. Derry made a statement of that kind. The witnesses who appeared on the scene found Edward in a semi-conscious condition on the shoulder of the road crying and calling for his mother. The automobile had struck him on the calf of the right leg, on his back and on the back of his head. Edward, who seemed to be a little confused as to just where the road and shoulder merged, as we read his evidence, said that he was standing about three feet from the ditch at the time he was struck and was looking toward a train which was passing over the highway toward the south and also at a dog on the other side of the train and did not see the automobile that struck him. In other words, the effect of his testimony is that he was not facing the highway as the automobile passed and was not going towards the automobile. His testimony is corroborated by that of Alva Neighbors as to him proceeding in a southeasterly direction parallel with the highway when she last saw him and also that he was paralleling the highway as he traveled. They were both going in the direction of a path which crossed the highway south of them in order to play at the mill and lumber yard which was across the highway down near a bridge. Their testimony was strongly corroborated by the fact that the witnesses who appeared on the scene found Edward on the shoulder about three feet from the ditch in a semi-conscious condition and by the fact that he was struck in the back. The theory of appellants, and they so testify, is that while they were traveling on the highway toward the south some three or four feet from where the shoulder merged into the road proper the boy appeared from somewhere and struck the side of the right front fender. Appellants and their witnesses who testified said they saw a few children on the shoul-

der, but that they did not see Edward until he came in contact with their automobile. The record reflects that at that point and in either direction the road was perfectly straight in both directions and nothing was on the side of the road to obstruct their view. If Edward had suddenly run out into the road in front of them or toward the side of the automobile there was nothing to prevent Mrs. Louis Derry from seeing him as he approached the automobile and nothing to prevent the other occupants in the automobile from seeing him. None of the occupants in the automobile claimed to have seen him dart out suddenly in front of or into the side of appellants' automobile. Their failure to so testify when taken in connection with the statement of Mrs. Louis Derry that she did not see the boy at all before the contact of their automobile and the fact that he was struck in the back were strong circumstances tending to show that Mrs. Louis Derry was not keeping a lookout as she was driving along the road at that point, but was looking over at the children who were playing football in the Broadway field or yard. At least the jury could have so found and based their finding upon substantial evidence in the case.

Appellants contend, however, that Edward was guilty of contributory negligence, but we find nothing in the evidence tending to show that he was attempting to cross the highway at the point where he was struck or that he was traveling toward the automobile when he was struck. In fact there is a total absence of any evidence tending to show that he was guilty of contributory negligence.

We have not attempted to set out the testimony of each witness in detail, but have carefully read the record with a view of ascertaining whether there is any substantial evidence in the record tending to show that appellants were guilty of negligence in operating their automobile and whether Edward was doing anything at the time which contributed to his injury. As stated above, we think there is ample evidence from which a jury might have found that appellants were driving their automobile in a negligent manner and failing to keep a proper look-

out for pedestrians traveling along the highway and we also think there is no evidence tending to show that Edward was guilty of negligence which contributed to his injury.

The court did not err in refusing to instruct a verdict for appellants at the completion of the testimony. Under our view of the testimony it became a question for the jury to determine whether there was liability and the court properly submitted that question to the jury.

Appellants also contend that the judgment is excessive. If Edward had not received any injury except to his leg and back from which he soon recovered the judgment would be excessive, but he was struck in the back of the head and he testified that the day following the examination by the physician there was a burning sensation and a roaring in his right ear and that it grew worse until he entirely lost his hearing in the right ear.

The evidence is quite voluminous pro and con upon the issue of whether the deafness was due to the lick on the head or whether to other causes. It is very conflicting. We do not think the undisputed evidence in the case shows that his deafness resulted from other causes and we think there is much substantial evidence in the case showing that the deafness in his right ear was largely due to the injury he received. There was an attempt to connect it with measles and mumps, but there is little or no tangible evidence that it was the result of disease. An attempt was made to connect it with a former automobile accident while Edward was riding in an automobile with his father, but the injury was to his ribs and not to his head. In that wreck a few of his ribs were fractured. There is a little evidence tending to show that he was not as bright as other children and it is argued that if he could have heard as well as other children who did hear he would not have fallen behind in his studies, but this is entirely problematical. His father testified that he attributed the fact that his boy did not advance as fast as other students of his age to dumbness, saying that he himself was dumb. It is true there is some evidence tending to show that he had

scar tissue in his right ear which was the result of disease or former injuries to his head and ear, but the fact remains that he did not become deaf until after the injury and until after the burning sensation and roaring appeared in his ear. We think under all the proof it became a question for the jury and was properly submitted to them.

L. H. Grimes took a cross-appeal from the judgment against him in view of the fact that the parties stipulated that he had expended $24.50 on medical services for his son, Edward, on account of the injury; the verdicts and judgments for and against him are inconsistent. There is nothing in the testimony showing that L. H. Grimes was guilty of any contributory negligence because he allowed his boy to play with other children in the neighborhood. This court said in the case of *Fulbright* v. *Phipps,* 176 Ark. 356, 3 S. W. 2d 49, that: "It is true that the verdict is not consistent, but this is not ground for us to reverse the judgment, as it is supported by very substantial and sufficient testimony."

Again L. H. Grimes made no objection and saved no exceptions to the court in instructing the jury as follows: "You may find for either of the plaintiffs or for both of the plaintiffs—in other words, you may find that one is entitled to recover and the other not."

We think L. H. Grimes waived his right of recovery, or is estopped to assert it here by reason of the fact that he permitted the trial court without objection or exception to instruct the jury as he did.

We are of the opinion that there is substantial evidence in the record from which the jury might have found, as it did, that appellants were guilty of operating an automobile without keeping a proper lookout, and are also of the opinion that $3,000 is not an excessive verdict for the destruction of the hearing in one ear and other injuries, and that the undisputed evidence does not show that Edward was guilty of negligence which contributed to his injuries.

The judgments are affirmed on direct and cross-appeals.