FOWLER BUTANE GAS COMPANY, et al. *v.* VARNER

No. 42199 May 21, 1962 141 So. 2d 226

*Dudley W. Conner,* Hattiesburg, for appellants.

*Pierce & Waller,* Jackson, *Walker & Sullivan,* Mendenhall, for appellees.

138

Rodgers, J.

This is a personal injury damage suit growing out of an accident caused by the backing of a dual wheel butane gas truck over the body of Pamela Ellen Varner, a little thirty-three months old girl. The suit filed by Pamela Ellen Varner, a minor, against Fowler Butane Gas Company, and Jimmy Luper, the truck driver, was originally filed in the Circuit Court of Simpson County, Mississippi. The Father, Charles Ray Varner, and Mother, Barbara M. Varner, of Pamela Ellen also

filed a suit in the Circuit Court to recover expenses by way of doctors, hospital and nurses care, and minor expenditures to restore Pamela Ellen to good health. These two suits were consolidated on motion of defendant and tried jointly. The jury returned separate verdicts in the two cases and the court entered two judgments.

It appears from the record that on August 1, 1959, the defendant Jimmy Luper, the driver of the butane gas truck for the Fowler Butane Gas Company, drove a truck weighing approximately 14,000 pounds with a 1,200 gallon capacity tank, into the yard of Walter Varner. His home is located on the west side of a public road running in a northerly and southerly direction and fronts east. Charles Ray Varner, son of Walter Varner, and father of the minor-plaintiff, Pamela Ellen Varner, lives directly in front of his father's home and across the public road. Jimmy Luper drove his truck into the driveway, going in a westerly direction, and turned behind the home of Mr. Walter Varner, turning in a southerly direction to a tank where butane gas was stored. He pumped one hundred gallons of gas into Mr. Varner's gas tank. After the delivery had been made, the driver sat upon the back porch and talked to Mr. Walter Varner and his son, Charles Ray Varner, for a period of about fifteen minutes. Mr. Luper then got into his truck and backed it in a northerly direction until he had cleared the corner of the house, and then turned his truck ninety degrees due east and backed along the driveway for a distance of approximately forty feet. The truck had backed slightly off the driveway in a southeasterly direction for a distance of approximately two feet, when it ran across a sand bed where Pamela Ellen Varner was then playing. The left rear dual wheel passed over the plaintiff's body, and as the truck proceeded to back, the child came into the driver's view under the running board. The driver

immediately stopped the truck and picked the child up from the ground. The child was in a, serious condition, appeared to be lifeless, was limp and rapidly turning blue for the lack of oxygen. Mr. Luper gave an alarm and Charles Ray Varner ran out to the truck and took the child. Mr. Walter Varner, Charles Ray Varner, Mrs. Barbara Varner, and Mr. Lupe went to the Magee General Hospital which was approximately four and one-half miles from where the child was injured, in the automobile of Charles Ray Varner. Dr. Charles Pruitt, M. D., chief of staff of the hospital, took the child in charge, and later testified that the child was in a state of shock, had trouble getting her breath, was a little bluish, had skinned places, and some bloody scratches around over various parts of her body. There were tire marks on the back of her body and on the upper part of her chest. Skin had been scraped off of her left foot, and on the lateral side of her left ankle. The doctor testified that the child's left lung had collapsed and the left first and second ribs were broken, and the left lung showed evidence of bleeding, and the right lung also showed evidence of bruises and hemorhage. It was later discovered that the pelvis bone was fractured in two places, one in front and the other in back where the pelvic bone joins the backbone. The testimony shows without question that this child is permanently injured, that she drags her right foot as she walks, she has a limp which is due to paralysis of the anterior perineal group of muscles so that the muscles will not lift the foot. It is also shown that Pamela Ellen Varner may have trouble giving birth to children.

The testimony for plaintiff shows that the driver said to the occupants of the car on the way to the hospital that "It was my fault. I didn't look." The defendant Luper testified, however, that after they had finished talking, and before he started backing the truck, Charles Varner walked to the back end of his truck and

said "It's all right. Come on back." Defendant Luper
also testified that he walked to the back of the truck
and looked and that he could see clearly down the drive-
way due east and that there was nothing on the drive-
way at the time he turned to back in an easterly direction.
He testified that he could not see directly behind his
truck after he had started backing in an easterly di-
rection because of an apron extending along the tanks
on his truck. He testified that he never saw Pamela
until after the wheels had passed over her body. The
jury returned a verdict in favor of the plaintiffs' in
both cases.

■■ ■ Defendants have appealed to this Court and
have pointed out five assignments of error alleged to
have been made in the trial of the case in the court
below on which reversal is sought, namely: (1) The
trial court erred in overruling defendants' motion for
a bill of particulars; (2) erred in overruling defendants'
motion for a directed verdict at the conclusion of the
evidence in both cases; (3) committed error in granting
instructions requested by the plaintiffs; (4) the trial
court committed reversible error in refusing defendant
instructions denying punitive damages; and (5) the
verdict of the jury in both cases is excessive. The first
assignment of error is based upon an alleged failure
of the declaration to properly charge negligence, and
the motion of appellants for a bill of particulars. The
declaration charged that defendant Luper backed the
truck along the driveway in a grossly negligent man-
ner, and that he negligently and carelessly failed to
look and observe to see that there was no child behind
the truck, and backed his truck without keeping a proper
lookout, and negligently failed to give any warning, and
negligently and carlelessly backed the left wheel of the
said truck out of the traveled portion of the driveway,
and into the grassy part of the lawn where the plaintiff
was playing, and across the body and person of Pamela

Ellen Varner, etc. We are of the opinion that the declarations filed in the two cases sufficiently charge negligence, and that the learned trial judge did not commit reversible error in overruling the motion for a bill of particulars. See 38 Am. Jur., Negligence, Sec. 259, p. 949, Sec. 260, p. 950.

The second assignment of error alleged that the court should have sustained a motion for a directed verdict at the close of the evidence, and is based upon the testimony of the appellee Luper. He testified that he looked, and that he did not see the child. It is argued that: ''Can it be said that the defendant negligently failed to look and observe to see that there was no one behind the truck or in the area over which defendant intended the backward movement of said truck to traverse when the positive testimony of the truck operator; and who was the only witness to this operation of the truck, was that he looked and there was no child in the driveway?''

██ This Court has long held that in passing upon a motion for a directed verdict, the trial court must concede to be true all evidence supporting the view of the party against whom the motion is made, giving him the benefit of all legitimate inferences that may be drawn from the testimony introduced. N. O. & N. E. Railroad Company v. Jackson, 140 Miss. 375, 105 So. 770; Lowe v. M. & O. Railroad Co., 149 Miss. 889, 116 So. 601; Gravette v. Golden Saw Mill Trust, et al., 170 Miss. 15, 154 So. 274; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613; Long v. Patterson, 198 Miss. 554, 22 So. 2d 490; Montgomery Ward & Co., Inc., et al., v. Skinner, 200 Miss. 44, 25 So. 2d 572; Davidson v. McIntyre, 202 Miss. 325, 32 So. 2d 150; Bankston v. Dumont, 205 Miss. 272, 38 So. 2d 721; Richardson v. Liddell, d. b. a. Liddell's Garage, 222 Miss. 172, 75 So. 2d 468; Cole v. Tullos, 228 Miss. 815, 90 So. 2d 32; Priest v. Avent, 236 Miss. 202, 109 So. 2d 643; Stoner

v. Colvin, et ux, 236 Miss. 736, 110 So. 2d 920; William-
son v. F. W. Woolworth Co., 237 Miss. 141, 112 So. 2d
529; Maguire v. Carmichael, Exec., Estate of D. E. R.
Merchant, et al., 240 Miss. 732, 128 So. 2d 581; William-
son v. Inzer, 239 Miss. 707, 125 So. 2d 77.

■■ Negligence and the proximate cause of an in-
jury may be established by circumstantial evidence in
the same manner as any other fact may be established.
The textwriter of 38 Am. Jur., Negligence, Sec. 333, p.
1032, puts this concept in the following language: ''Cir-
cumstantial Evidence. — The law does not require every
fact and circumstance which make up a case of negli-
gence to be proved by direct and positive evidence or
by the testimony of eyewitnesses. Proof of the fact of
negligence may rest entirely in circumstances; in other
words, circumstantial evidence alone may authorize a
finding of negligence. Hence, negligence may be inferred
from all the facts and attendant circumstances in the
case, and where the circumstances are such as to take
the case out of the realm of conjecture and within the
field of legitimate inference from established facts, a
prima facie case is made.''

■■ There can be no question from the testimony
in this case of the fact that the child was behind the
truck, and was there at a time when the truck was
being backed toward the sandpile where she was wont
to play, and that the truck ran over her in the sandpile.
The jury had a right to believe as a legitimate inference
from the factual circumstances that the defendant Luper
was at one time in a position to see that the child was
there, and had he kept a proper lookout he would have
seen the child playing in the sand. This fact becomes
more evident when other witnesses testified, as they
did in this case, that he told them he did not look. The
mere fact that he testified on the trial that he looked
and did not see the child will not relieve him of re-
sponsibility where there is other testimony indicating he

did not look, on which the jury could reasonably base a verdict.

A driver of an automobile must exercise ordinary care in backing, and to back without taking necessary precaution is negligence. 5 Am. Jur., Automobiles, Sec. 328, p. 679. The same textwriter has pointed out in Sec. 330 that: ''One precaution that must be taken before starting to back is that of looking to see that the way is clear. The driver must continue to look while he is in the act of backing.

''One is not negligent per se in backing an automobile, when he cannot see over the back of the car so as to know what might be in his way, if he takes reasonable precautions, before starting to back, to make proper observations by looking to the right and to the left of the car and by standing up and looking over the back.''

This Court has pointed out in highway accident cases that it is the duty of an automobile driver to keep his automobile under control and to keep a lookout in the direction in which he is proceeding, and must at all times be vigilant and anticipate and expect the presence of others and cannot assume that the way is clear.

Flynt v. Fondren, 122 Miss. 248, 84 So. 188; Porter, et ux v. Nesmith, et al., 124 Miss. 517, 87 So. 5; Rhodes v. Fullilove, 161 Miss. 41, 134 So. 841; Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461; Coker v. Five-Two Taxi Service, Inc., 211 Miss. 820, 52 So. 2d 356; Reed v. Eubanks, Admrx., etc., 232 Miss. 27, 98 So. 2d 132.

In the case of Ulmer v. Pistole, 115 Miss. 485, 76 So. 522, this Court used the following language with reference to the duties of an automobile driver to keep his vehicle under control and keep a proper lookout: ''The same general law applicable to the use of all vehicles on public highways applies to automobiles, the substance of which is that a driver must use that degree of care and caution which an ordinarily prudent person

would exercise under the same circumstances. But this is not all. Recognizing in the motor vehicle an instrumentality equally as dangerous in many respects as the locomotive and trolley car, the law exacts additional precautions from operators. The driver of an automobile must keep his machine constantly under control, he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence. To assume that the way is clear is not his right. The fact that he was unaware of the presence of others in no way extenuates conduct which would have been wantonly reckless, had he known that another person or vehicle was crossing his pathway. * * * It has even been held that the failure to see a pedestrian in the street amounted to negligence.''

 This Court has held that the statutes applicable to public ways and intersections have no legal application to regulate the operation of an automobile on private property. Vaughan, et al., d. b. a. V & W Contracting Company v. Lewis, et al., d. b. a. Lewis & Hobbs Constructing Company, 236 Miss. 792, 112 So. 2d 247. It is, nevertheless, true that common law applies in the absence of statutory authority and requires the operator of a motor vehicle to exercise ordinary, reasonable or due care toward others. Hadad v. Lockeby, 176 Miss. 660, 169 So. 691; 5 Am. Jur., Automobiles, Sec. 187, p. 608. The later textwriter uses the following language in 5 Am. Jur., Automobiles, Sec. 332, p. 681: ''In fact, it has been said to be imprudent to back an automobile out of a garage across the sidewalk without taking extra precautions to avoid running down passers-by. Especially where the view is obstructed is it necessary to take extra precautions.''

In 38 Am. Jur., Negligence, Sec. 14, p. 655, it is said: ''The duty of exercising care to protect another person against injury may be imposed expressly or impliedly by a statute or municipal ordinance. Moreover, such a

duty exists at common law as a matter of relation and of knowledge of danger, which in turn, depends upon the probability of injury. * * * The rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated; but as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island; and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them.''

The testimony shows in this case that Mr. Luper, in answer to the question ''Have you ever seen children around Mr. Varner's house?'' said ''I have saw them on the porch.'' Q. ''Did you ever see them in the yard?'' A. ''No, sir.'' Q. ''But all that time you never have seen those children in the yard?'' A. ''I haven't in the yard. I have saw them in the house, now, because I have been in the house several times, you know.'' The evidence shows that the defendant truck driver knew that there were children about the place; therefore, in accordance with the above Robinson Crusoe theory, he ''had seen the tracks in the sand'' and the rule began to have vitality.

In the case of Clark v. Gilmore, 213 Miss. 590, 598, 57 So. 2d 328, the Court said: ''The blind backing of a truck along a street, with no provision at all to warn persons or other employees in its path, and with no requirement that the driver shall be on the lookout, under the circumstances in this case, did not constitute reasonable care. At least it was a question for the jury.''

In the case of Virginia Stage Lines v. Spencer, 184 Va. 870, 36 S. E. 2d 522, a bus driver backed into a pedestrian, a child, on the service station property in front of the service station. The Court held that the bus line was liable, and said: ''In our opinion there was ample evidence of the driver's negligence. The

maneuver undertaken by him was in itself dangerous. As has already been noted, from his seat, due to the construction of the vehicle, it was impossible for him to have seen a person in the rear of the bus. And yet he undertook to back this vehicle, according to plaintiff's witnesses, a distance of 50 feet down the highway and diagonally across the pathway which he knew, or ought to have known, was frequented by pedestrians.''

In the case of Culton, et al. v. Van Beck, et al., 256 Wis. 217, 40 N. W. 2d 374, the defendant drove his car into a farm yard where it was parked. On his return to the vehicle he started the motor and looked into the rear view mirror before backing up, and seeing no children behind the car, he moved it in a backward direction, running over a sixteen months old child, inflicting serious injury. The Supreme Court of Wisconsin held that the negligence of defendant was a question for the jury. See also the case of Rye v. King, 246 N. W. 256 (Minn. 1933).

The textwriter in 5 Am. Jur., Automobiles, Sec. 330, p. 680, said: ''One precaution that must be taken before starting to back is that of looking to see that the way is clear. The driver must continue to look while he is in the act of backing.''

The textwriter in Babbitt, Motor Vehicle Law, 4th Ed., Sec. 1618, p. 1137, said: ''One of the most dangerous operations in managing a motor vehicle is backing, and great care should be used, as usually the driver has not a clear view behind. More accurately, ordinary care under these circumstances requires a greater degree of diligence than in others. The operation should be undertaken only after proper signal and ascertaining that the way is clear. So, the driver must look backwards while in the act of backing into the highway, and if he fails to do so he may be held negligent; particularly, where he has seen children playing on the sidewalk, and he backs without assuring himself that no one is in his

path. * * * But one who backs into the street from private grounds must use greater care than one driving in the street. It has been held negligent for a driver to back his automobile without ascertaining what was behind him and without giving any signal, although the top was up so that he could not see, and he may be liable in damages, especially in backing at a congested intersection, or into a child playing in the street.''

The facts in a similar case, Kropp v. Clem, 96 So. 865 (Ala.), show that a defendant slowly backed from his garage toward the sidewalk, looked to the side and the rear as far as possible and had his wife look on the otherside. The Court said the facts raised a question for the jury as to whether he exercised due care with respect to the plaintiff, a small child, whom he injured.

In the case of Woo v. Low Chew, et al., Wilton Woo v. Low Chew, 16 P. 2d 1001, where the defendant backed his truck into the curb and a child was riding in a toy wagon and the truck struck the wagon, the Court said: ''As to whether the driver gave a warning signal as he approached the curb, the evidence is conflicting. It appears that the body of the truck extended 18 inches beyond his rear wheels * * *'', and the Court further said there was sufficient evidence of negligence to submit the case to the jury.

In the case of Callahan v. Disorda, 16 A. 2d 179, where an action for injuries sustained by a three year old boy who was struck by defendant's backing automobile, defendant made a motion for a directed verdict on the ground that from all of the evidence in the case, there was no evidence that defendant was in any way negligent in the operation of her motor vehicle at the time and place of the event in question, but the Court held the facts presented a question for the jury.

In the case of Derry, et al. v. Grimes, et al., 148 S. W. 2d 676 (Ark. 1941), a child was struck in the back by an automobile where none of the occupants of the

automobile claimed to have seen the minor dart out in front or side of the automobile, and a number of witnesses testified that the driver stated that she did not see the minor before striking him. Her statement was: "I didn't see the boy at all. I was looking across the field in front of the house and just didn't see him." The Court held that the fact as to whether or not the driver was negligent in not keeping a proper lookout was a question for the jury.

Cases cited by appellant on the grounds of foreseeability and improbability are not in point here. There was a conflict in the evidence on the question as to whether or not the driver had kept a proper lookout in the case at bar, and there are circumstances from which the jury could have reasonably inferred that, had the driver kept a proper lookout he would have seen Pamela Ellen Varner. The general rule is, where there is a conflict in the evidence, the question of negligence is for the determination of the jury. See. Sec. 1102, Blashfield's Ency. of Automobile Law and Practice, p. 274; Gulf Refining Co., et al. v. Miller, et al., 150 Miss. 68, 116 So. 295; Universal Truck Loading Company v. Taylor, 178 Miss. 143, 172 So. 756; Tri-State Transit Company v. Martin, 181 Miss. 388, 179 So. 349.

We are of the opinion that the learned trial judge was correct in overruling the motion for a directed verdict at the close of the testimony.

We have carefully read the instructions granted plaintiffs in the trial court, and we have reached the conclusion that these instructions were not, as alleged by appellant, mere abstract principles of law, but that they properly announced the law applicable to the facts in this case, based upon the grounds of negligence alleged in the pleadings. We are therefore of the opinion that the trial judge was not in error in granting the instructions for plaintiff.

Appellants' next assignment of error complains that the refusal of the trial judge to grant an instruction as to punitive damages under the facts in this case, was reversible error. The instruction denied appellants is in the following language: "The Court instructs the jury for the Defendants that you can not in this case in any event return a verdict against the defendants for punitive damages." The declaration filed by the plaintiffs in both cases demanded judgment for actual and punitive damages.

And, although appellees did not obtain an instruction on punitive damages in either of the cases, they requested and obtained an instruction informing the jury that it might return a verdict for them, as follows: "* * * if you find a verdict for the Plaintiff, then it will be your duty to affix the amount of your verdict at that sum which will be fair and reasonable compensation for all the damages sustained by the Plaintiff, as shown by the testimony * * *" The question for determination here is, could the jury under the facts in this case have allowed punitive damages, and if not, the trial court should have so instructed the jury when requested so to do.

Punitive damages, "exemplary" damages, and "vindictive" damages are in legal contemplation synonymous terms, and sometimes called "smart money". Punitive damages are "added damages" and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others. In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evinc-

ing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. 15 Am. Jur., Damages, Sec. 265, p. 698; 13 Cyc. 105; Yazoo & Mississippi Valley R. Co. v. Hardie, 100 Miss. 132, 55 So. 42; Yazoo & M. V. R. Co. v. May, 104 Miss. 422, 61 So. 449; Chicago, St. Louis & N. O. R. Company v. Scurr, 59 Miss. 456; New Orleans, Jackson & Great Northern R. Co. v. Statham, 42 Miss. 607; Southern R. R. Co. v. Kendrick and Wife, 40 Miss. 374; Heirn v. McCaughan, et ux, 32 Miss. 17; Winn & Lovett Grocery Co., et al. v. Archer, et al., 171 So. 214 (Fla. 1936); Illinois Central R. R. Company v. Ramsey, 157 Miss. 83, 127 So. 725; Bounds v. Watts, 159 Miss. 307, 131 So. 805; Yazoo & M. V. R. Company v. Mullen, 158 Miss. 774, 131 So. 101.

 ██ This Court has pointed out that "* * * in punitive or exemplary damages the award is in the nature of a punishment for wrongdoing and an example, so that others may be deterred from the commission of such wrongs and the public be properly protected." Yazoo & M. V. R. Company v. May, supra. See also: Anno. 123 A. L. R. 1120; 15 Am. Jur., Damages, Sec. 266, p. 700; Malone v. Montgomery Ward & Company, 38 F. Supp. 369 (Miss.); Milner Hotels, Inc., et al. v. Brent, 207 Miss. 892, 43 So. 2d 654.

 ██ We have said "Punitive damages are punishing damages; and are awarded to the injured party as a reward for public service in bringing wrongdoers to account." Neal v. Newburger Company, 154 Miss. 691, 123 So. 861. On the other hand, it must be borne in mind that punitive damages may be recovered not only for wilful and intentional wrong, but for such gross and reckless negligence as is, in the eyes of the law, equivalent to wilful wrong. Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539; Hadad v. Lockeby, 176 Miss. 660, 169 So. 691; Bush v. Watkins, 224 Miss. 238, 80 So. 2d 19; Planters Wholesale Grocery v. Kincade, 210

Miss. 712, 50 So. 2d 578; Dame v. Estes, 233 Miss. 315, 101 So. 2d 644.

■ ■ What are the facts here from which a jury could reasonably infer that the acts of the appellant was so gross and reckless as to evince disregard for the rights of others and so gross as to be equivalent to a wilful wrong? Taking the strongest testimony for the appellees, it would appear that the appellee Jimmy Luper got in his truck and backed it up, without looking, and although he was aware that he could not see under the edge of the truck because of the skirt or tool box on the left side of the truck, he did not go back of the truck and look befoie attempting to back out. The jury could reasonably infer from the testimony that the driver backed slightly off the driveway because of the fact that he could not see where he was backing and ran over the child in a sandpile. Moreover, it is not contended that the driver blew his horn. On the other hand, it is admitted that the driver Jimmy Luper was very much concerned about the injury to the child. He made the alarm, and went with the parents to the hospital, and continued to visit the child until it was out of danger. He loves children. He has children of his own, and it must be conceded that the injury to Pamela Ellen Varner was a great shock to him. Assuming, arguendo, that he was negligent in the manner in which he backed his truck toward the highway, nevertheless he had safely backed out in the same way along the driveway, in the same truck, for several years. Moreover, the driver did not see the child, nor did he continue to back with the knowledge that the child was behind him. Where is the testimony to indicate negligence so reckless as to evince disregard for the rights of others or so gross as to be equivalent to a wilful wrong?

In the case of Hadad v. Lockeby, supra, this Court said: "He (the driver) *saw* Lockeby and the negro crossing the road and did not slacken his speed, or sound

his horn, or give any alarm until he struck them. This, if true, was gross negligence on the part of the appellant. 'Punitive damages' may be recovered * * *'' (Emphasis supplied.) See also Galtney, et al. v. Wood, 149 Miss. 56, 115 So. 117.

We think, however, that the case of Duvigneaud v. Jenkins, 129 So. 629 (Miss.), is a case in point here on the question of punitive damages. In that case defendant backed his automobile up at a rapid rate of speed after having looked back, at the same time turning his front wheels so that the rear fender or tail fin of the automobile extended over the curb and struck appellant who was standing at the edge of the curb. The Court said: ''We are of the opinion that the question of punitive damages should not have been submitted to the jury. * * * Undoubtedly appellant was guilty of negligence as a matter of law, but we think that he was guilty only of simple negligence.''

In the case of West Brothers, Inc. v. Barefield, Trustee in Bankruptcy, etc., 124 So. 2d 474 (Miss.), where the facts show that plaintiff sued for the wrongful seizure of certain tractor equipment and demanded judgment for actual and punitive damages. Defendant was refused an instruction that the jury could not return a verdict for punitive damages. The jury returned a verdict for actual damages in the sum of $1.00 and punitive damages in the sum of $20,000.00. This Court reversed the case in part for the refusal to grant the requested instruction denying defendants liability for punitive damages.

We have therefore come to the conclusion that in the suit brought by the child, the trial court should have granted the punitive damage instruction, and although plaintiffs sought no instruction for punitive damages, nevertheless the defendants were entitled to have the jury instructed that they were not liable for punitive damages, because the declaration submitted to the jury

the demand of plaintiffs for punitive damages. The verdict rendered for the child of $65,000 is large. Since no instructions were given to the jury on the question of punitive damages by plaintiff, we may assume that the verdict included punitive damages. And although this may be true, the medical testimony shows that the plaintiff, Pamela Ellen Varner, had broken ribs, fracture of the pelvis, fracture through sacroiliac joint, permanent paralysis of the nerves of the right leg so as to cause "foot-drop." The fracture of the pelvis is such that it is the opinion of the doctors that plaintiff will have trouble giving birth to an average baby, and will probably be required to undergo a Caesarean section; and although she has had a marvelous recovery, she has nevertheless undergone excruciating and prolonged pain, and it will be necessary for her to seek medical assistance for a long time in the future. She will always limp.

It is pointed out in 15 Am. Jur., Damages, Sec. 225, p. 652, that several years ago "Verdicts up to $50,000 for injuries resulting in impairment or loss of ability to bear children, usually in conjunction with other injuries" have been allowed. A long list of cases are cited and annotated in 102 A. L. R. 1186; 46 A. L. R. 1260; 16 A. L. R. 2d 335; permitting large verdicts in cases where there is an injury to the pelvis and affecting ability of childbirth. The recent cases permit recovery of up to $85,000 for injuries affecting ability to bear children.

It is the opinion of this Court, and we so hold, that the plaintiff Pamela Ellen Varner is, under the testimony and facts in this case, entitled to recover from the defendants actual damages sustained as a result of the injury. It is also apparent to us that she is entitled to a substantial verdict for the serious and permanent injuries sustained as a result of the negligence of defendants. The declaration sought recovery of actual and

punitive damages. The evidence does not warrant punitive damages. The defendant requested an instruction to that effect, and the court erroneously refused to grant the instruction. Even though she was entitled to an award of a substantial sum, nevertheless the verdict is large, and in view of her remarkable recovery, this Court is not able to say that the error in refusing the instruction was harmless. On the other hand, there is ample justification to find that some part of the verdict of the jury was for punitive damages, and we are of the opinion that the verdict should be reduced in both cases.

We are finally therefore confronted with the proposition whether or not to reverse this case because of failure of the trial court to instruct the jury with reference to punitive damages, and require the case to be submitted to another jury on the question of damages alone, or to affirm the verdict and reduce it to a sum beyond which the testimony does not warrant a judgment.

In the case of Storm v. Green, 51 Miss. 103, this Court suggested that a new trial should not be granted because of the giving of an instruction on exemplary damages where justice has been done by the verdict. The Court said: "If the result of the trial is clearly right on the law and the evidence, a new trial will not be awarded by this court, although the court may have misdirected the jury. If the verdict is right and justice has been done, it cannot be affirmed that the plaintiff in error has been prejudiced by the instructions. Why remand the cause for another trial when it is manifest that the same result will be attained? Erroneous instructions are not grounds for setting aside a verdict, where it is plainly right on the law and facts." See also New Orleans, Jackson & Great Northern R. Company v. Statham, supra.

We have pointed out that the appellee, Pamela Ellen Varner, is entitled to a substantial verdict for actual

damages, without regard to punitive damages, and if this case were retried on the question of damages alone, the jury would be required to bring in a verdict for adequate damages, otherwise the case would necessarily be reversed for another trial. We have therefore decided to reverse this case for a new trial on the question of damages alone, unless a remittitur is filed as hereafter directed.

██ ██ We have reached the conclusion in the case of the parents, Mr. and Mrs. Charles Ray Varner, against defendants, appellants here, that the court should have granted the instruction above-mentioned with reference to punitive damages, because the facts, as above-shown, do not warrant punitive damages, and moreover punitive and exemplary damages are not recoverable in a suit by parents for injury to a child except for seduction. An annotation of many cases on this point may be found in 37 A. L. R. 50, wherein it is said: "While there is contrary authority (vide infra), it has usually been held that if a minor sustains personal injuries under such circumstances of wilfulness, aggravation, or oppression as to justify an imposition of exemplary or punitive damages upon the wrongdoer, the right of recovery thereof is in the child, and that there can be no recovery of the item by the parent in his own right." It is also said: "* * * that the measure of damages in a parent's action for injuries to a minor child, other than a case of seduction, is the actual damage which the plaintiff has suffered * * *". Whitney v. Hitchcock, 4 Denio 461 (N. Y.) See also Wilkie v. Roberts, 109 So. 225 (Fla. 1926); Bernard, et ux v. Gravios, 8 So. 2d 318 (La. 1942); Louisville & N. R. Company v. Bryant, 200 Ky. 177, 252 S. W. 145; Knox v. Allen, 4 La. App. 223; Tidd v. Skinner, 225 N. Y. 422, 122 N. E. 247; Bube v. Birmingham Railway, Light & Power Co., 140 Ala. 276, 37 So. 285.

 ██ It is apparent to this Court that the testimony does not warrant a verdict for the sum shown in the judgment. The medical bills to date amount to $1,587.50 and future medical expenses and travel, and other expenses shown in the testimony, could not reasonably be expected to exceed $7,500. We have therefore reached the conclusion that the case of the parents against defendants will be reversed for a new trial on the question of damages alone, unless plaintiffs enter a remittitur in the sum of $7,500 within fifteen days from the date of this decision, but in the event a remittitur is filed by plaintiffs, the judgment in the lower court will be affirmed for $7,500.

 ██ The suit by plaintiff, Pamela Ellen Varner, is hereby affirmed as to liability, but reversed for a new trial on the question of damages alone, unless within fifteen days from the date of this decision the plaintiff, through her representatives, enters a remittitur in the sum of $15,000. If, however, a remittitur is entered, the judgment of the lower court will be affirmed for the sum of $50,000.

Affirmed in part; reversed in part; and remanded, unless remittitur is filed within fifteen days.

All Justices concur.