261 So.2d 481 (1972)
T.G. BLACKWELL CHEVROLET CO., Inc. and Joe Mitchell
v.
Don E. ESHEE.
No. 46652.
Supreme Court of Mississippi.
April 25, 1972.
Rehearing Denied May 15, 1972.
*482 Pritchard, Neeld & Pierce, Don H. Evans, Jackson, for appellants.
Bernard W.N. Chill, Jackson, for appellee.
RODGERS, Presiding Justice.
The appellee, Don E. Eshee, filed a tort suit against the appellants for damages alleged to have accrued to the appellee as the result of certain wrongful acts of the appellants. The suit was filed in the Circuit Court for the First Judicial District of Hinds County, and resulted in a jury verdict and judgment for appellee in the sum of nine thousand dollars ($9,000.00).
The appellants, T.G. Blackwell Chevrolet Company, Inc., and Joe Mitchell, have appealed from the circuit court judgment and now contend that the judgment should be reversed and that appellants should be awarded a new trial. Appellants argue that: (1) The court granted conflicting instructions; (2) The court by its instructions permitted the jury to find appellants guilty of negligence in the absence of proof or pleading as to negligence; (3) The court erred in permitting the jury to return a verdict for punitive damages against the appellants.
The record reveals that the dispute between the parties to this litigation came about under the following circumstances:
On November 28, 1969, the appellee Don E. Eshee purchased a 1966 Chevelle Super Sports Model automobile from T.G. Blackwell Chevrolet Company and that a Mr. Ponder, an agent of the Chevrolet company, represented to appellee that the car was a good "low mileage" car in excellent condition, but such representation was untrue, because immediately after having purchased the automobile, the appellee was required to have a considerable amount of *483 repair done on the motor and brakes of the purchased automobile. The purchase agreement between the appellee and the Chevrolet company included the "standard used car warranty of fifty-fifty agreement" by which the Chevrolet company agreed to pay one-half of the cost of repairs on the sold automobile for a period of thirty (30) days and thereafter for a period of two (2) years the Chevrolet company agreed to pay fifteen percent (15%) of the cost of labor and parts necessary to repair the automobile. The thirty-day warranty was extended after the appellee complained of the number of times that he had to have work done on the automobile.
The original contract between the parties obligated Mr. Eshee to make twenty-four (24) monthly payments of seventy-eight dollars and eighty cents ($78.80), in addition to having delivered his previously owned 1963 Chevrolet automobile to the Chevrolet company as a down payment of three hundred fifty dollars ($350.00) on the original sale price.
The appellee, Eshee, became displeased with his purchase because he said it was a lemon. He "set the car up" on his property and refused to make any further payments on the contract price. In the meantime, however, the T.G. Blackwell Chevrolet Company had assigned his written sale contract to General Motors Acceptance Corporation, an automobile finance corporation. The finance corporation returned the contract to the automobile company, because, it is said, the interest due under the contract was erroneous in that the payments due should have been seventy-six dollars and sixty cents ($76.60) rather than seventy-eight dollars and eighty cents ($78.80). The original contract was then marked "void" by the employees of the Chevrolet company, and the appellee was notified by a letter from an employee of the automobile company to come to the Chevrolet company to sign a new contract. The appellee, Eshee, went to the office of the Chevrolet company, but he refused to sign a new contract. Whereupon, the agent of T.G. Blackwell Chevrolet Company, Inc., a Mr. Mitchell, wrote the name of the appellee on the changed contract form and assigned it to General Motors Acceptance Corporation, representing the contract to be the genuine contract of the appellee. The finance company accepted the assigned contract and mailed Mr. Eshee a book of coupons to be returned with each payment. When the appellee received the coupon book he had his wife to call the finance corporation and tell them that he had not signed the alleged contract and that he would not make the payments requested. An agent of the finance company advised Mrs. Eshee that Mr. Eshee's credit rating would be destroyed and that his automobile would be repossessed.
Mr. and Mrs. Eshee testified that the appellee was upset. Appellee said that the transaction "made me nervous, I had headaches, [and] lost sleep." He said he had to worry about how his wife would get to work.
The automobile which had been "setting up" at his home was finally voluntarily delivered to the T.G. Blackwell Chevrolet Company. Suit was then filed by appellee, Eshee, against General Motors Acceptance Corporation, T.G. Blackwell Chevrolet Company, Inc., and Joe Mitchell. General Motors Acceptance Corporation was, however, released on a demurrer. The company filed its answer in which it offered to pay the plaintiff the sum of three hundred fifty dollars ($350.00) representing the down payment and to cancel the sale contract.
In the outset it will perhaps clear away some of the confusion that may have been engendered by the detailed statement of facts if we point out that this suit is not based upon recision of the original contract. It is rather a suit on alleged tort committed against the appellee by the agents of the Blackwell Chevrolet Company in forging his name to a spurious contract. 1 C.J.S. Actions § 51, p. 1147 *484 (1936); 37 C.J.S. Fraud § 62, p. 351 (1943); 52 Am.Jur. Torts, § 33, p. 383 (1944).
The appellee was alleged to have been made sick and was injured physically by the threat to destroy his credit rating, caused by the forged contract. Appellee contends that he was damaged by the loss of his "trade in" automobile. He was unable to furnish his wife transportation. He spent considerable funds to repair the automobile sold him and which was returned to the Blackwell Chevrolet Company.
The appellants contend on appeal that the court granted two conflicting instructions. The first instruction for the plaintiff is in the following language:
"The court charges the jury for the plaintiff; That you shall find for the plaintiff and it will be your duty to fix the amount of your verdict at that sum which will be fair and reasonable compensation for all the damages sustained by the plaintiff, as shown by the testimony, if any, as a direct and proximate result of the negligence of the defendants whether the injuries sustained be temporary or permanent. And that in calculating the amount of damage, if any, the plaintiff is not required to prove with accuracy in dollars and cents, the amount of the damages sustained, but it is for the jury to fix the amount thereof in dollars and cents after taking into consideration the character, kind, extent and duration of such injury, if any, as shown by the testimony."
Instruction No. 2 for the defendant is in the following language:
"The Court instructs the jury for the Defendants that under the law of this state that Defendants had a legal right to alter the original installment purchase contract executed by the Plaintiff to give the Plaintiff the benefit of a lower interest rate and of lower monthly payments, if such alteration was not made for a fraudulent purpose."
The appellants contend that they were entitled to the second instruction because they had a legal right to amend or change the contract so long as the change was in favor of the purchaser named in the contract. They cite Section 41A:3-407, Mississippi Uniform Commercial Code (Special Supp. 1968). This section is in the following language:
"§ 41A:3-407. Alteration

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in
(a) the number or relations of the parties; or
(b) an incomplete instrument, by completing it otherwise than as authorized; or
(c) the writing as signed, by adding to it or by removing any part of it.
(2) As against any person other than a subsequent holder in due course
(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;
(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.
(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed."
It is obvious that this section does not give the automobile company the authority to sign the name of the purchaser to a contract. This becomes more apparent when *485 we read the foregoing section in conjunction with Section 41A:3-401, Mississippi Uniform Commercial Code, (Special Supp. 1968), wherein it is said:
"(1) No person is liable on an instrument unless his signature appears thereon."
The appellants' second instruction is erroneous and should not have been given to the jury.
The appellants also contend that the foregoing instruction for the plaintiff was erroneously given because, it is said, it is a negligence instruction; that the pleading is not based on negligence; that there is no proof of negligence; and that the instruction does not define negligence.
We agree with the contention of appellant that the action here is not based on negligence, in fact, nothing is said in the pleadings nor the testimony as to negligence. This instruction which referred to negligence instead of fraud or wrongful acts was an error.
We cannot agree, however, that the giving of the foregoing instruction including the word "negligence" instead of "wrongful acts" is so erroneous as to require a reversal of this case. It is apparent from the record in this case that the plaintiff was subjected to deliberate mistreatment in utter disregard of his rights. It is apparent that the jury was not misled nor confused by the erroneous instruction. Rule 11 of this Court will not permit a reversal of a judgment on the ground of misdirection to the jury unless it shall affirmatively appear, from the whole record, that such judgment has resulted in the miscarriage of justice. Under the facts here shown we cannot say that an injustice was done by the verdict of the jury in this case.
We cannot agree with appellants' contention that plaintiff was not entitled to have the issue of punitive damages submitted to the jury. The issue here is fraud. Punitive damages are allowable in those cases where the alleged wrong done the plaintiff is such as to import insult, fraud, oppression or a reckless disregard for the rights of the plaintiff. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962).
Of course, since punitive damages are "added damages" the plaintiff must have suffered some actual damages (McCain v. Cochran, 153 Miss. 237, 120 So. 823 [1929]) and, although it is true that damages may not be recovered for mere slight inconveniences "without more" (Allen v. Edwards, 217 So.2d 284 [Miss. 1969]); nevertheless, damages may be recovered for emotional anguish, suffering, and emotional distress where the wrongful act causing such condition was intentionally or willfully done or done with such grossness and recklessness as to evince utter indifference to consequences. 25 C.J.S. Damages § 64, p. 817 (1966).
In the case of Lyons v. Zale Jewelry Co., 246 Miss. 139, 150 So.2d 154 (1963) we held that damages for mental anguish or suffering are recoverable when they are the natural or proximate result of an act committed maliciously, intentionally or with such gross carelessness or recklessness as to show an utter indifference to consequences.
Compare Arnold v. Spears, 217 Miss. 209, 63 So.2d 850 (1953).
There is a modern trend of court opinions moving toward permitting the recovery for mental pain or emotional damages as an independent ground of recovery, in cases of intentional or willful wrong or acts done with such gross carelessness or recklessness as to indicate utter disregard for the rights of others. 25 C.J.S. Damages § 64, p. 817 (1966); Lyons v. Zale Jewelry Company, 246 Miss. 139, 150 So.2d 154 (1963).
The argument that the verdict of the jury was excessive, is not well taken, because there was no motion made in the *486 trial court to reduce the verdict, nor was there a motion for a new trial upon the ground that the judgment was excessive; therefore, this Court has no authority to review the amount of the verdict and judgment in this case. Watson v. Holeman, 169 Miss. 585, 153 So. 669 (1934); and Standard Oil Company v. Franks, 167 Miss. 282, 149 So. 798 (1933).
An examination of the record has led us to the conclusion that there are no reversible errors shown in the trial of this case, and for that reason the judgment of the trial court must be affirmed.
Affirmed.
JONES, BRADY, INZER and SUGG, JJ., concur.