In re Bobby CLARDY, d/b/a
Clardy Construction.

APAC–MISSISSIPPI, INC., a Mississippi
Corporation, Plaintiff,

v.

Bobby CLARDY, d/b/a Clardy
Construction, Defendant.

Bankruptcy No. 92–23845.
Adv. No. 93–2095.

United States Bankruptcy Court,
N.D. Mississippi.

June 9, 1995.

Philip T. Dean, Columbus, MS, for Bobby Clardy.

John Crowell, Gholson, Hicks & Nichols, Columbus, MS, for APAC–Mississippi, Inc.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint for declaratory judgment filed by the plaintiff, APAC–Mississippi, Inc., against the defendant, Bobby Clardy, d/b/a Clardy Construction; answer and a counterclaim for actual, extracontractual, and punitive damages having been filed by the defendant; all issues having been appropriately joined; and the court having heard and considered same, hereby finds as follows, to-wit:

### I.

This court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

### II.

On February 1, 1991, Clardy entered into a contract with APAC to perform certain paving work in a subdivision being developed by Clardy. After completing the work, APAC billed Clardy the sum of $9,635.25. When Clardy failed to pay the invoice, APAC filed

a materialmen's and contractor's lien. This was followed by the filing of a complaint to impress the lien in the Chancery Court of Lowndes County, Mississippi. Also named as party defendants to the lawsuit were E. Frank Goodman, trustee, and Eastover Bank for Savings which held a deed of trust encumbering the subdivision. This lawsuit is apparently still pending.

Subsequently, APAC obtained a contract to perform paving work at a Wal–Mart store in Amory, Mississippi. In connection with this contract, APAC contacted Clardy to determine if he would crack-seal the store's parking lot. Representing APAC during the negotiations with Clardy were Michael Bogue and Stan McCown. According to the uncontradicted testimony, Bogue and McCown had authority to act for and on behalf of APAC. After several discussions, Clardy executed a subcontract on July 27, 1992. The subcontract provided that Clardy would perform the crack-seal work at the rate of $.49 per linear foot. It contained a specific typewritten provision to the effect that $.02 per linear foot was "to be applied toward prior debt retirement." There was a general printed provision in the subcontract, paragraph 17, which was not excised, stating that APAC could setoff the entire payment due under the subcontract against any indebtedness that Clardy might owe to APAC. Clearly, the typewritten provision conflicted with the printed provision.

The testimony concerning the subcontract negotiations was reasonably consistent. Everyone was aware that Clardy owed a prior debt to APAC. The APAC representatives both indicated that Clardy expressed concern about getting paid for the subcontract work. McCown testified that he thought Clardy would be paid $.49 per linear foot less the $.02 per linear foot reduction. Bogue indicated that when he inserted the typewritten language that he did not intend to waive the printed provisions in the document. He added that he thought that if Clardy would make satisfactory arrangements to pay the prior debt that the $.02 per linear foot reduction would be the only amount withheld from the subcontract proceeds. Clardy candidly admitted that he knew that the general setoff

provisions were in the subcontract when he signed the document.

After completing performance, Clardy submitted a statement to APAC on August 7, 1992, in basically the following form:

| | |
|---|---|
| 12,820 feet @ $.49 per foot | $6,281.80 |
| less $.02 per foot toward debt retirement | 256.40 |
| Total due | $6,025.40 |

On October 19, 1992, a check from Wal–Mart was received by APAC. Clardy did not expect his payment until APAC had been paid by Wal–Mart. Shortly thereafter, Clardy requested payment, but it was refused.

Clardy then contacted his attorney, David Owen. Likewise, APAC contacted its attorney, Dewitt Hicks. These attorneys initiated several discussions in an attempt to resolve the dispute. Hicks stated that he made a settlement proposal calling for Clardy to make a $500.00 down payment on his debt to APAC, presumably from the subcontract proceeds, with the balance of the indebtedness to be paid at the rate of $500.00 per month. A down payment of some amount was apparently significant to APAC. Owen indicated that he proposed a counter offer consisting of the $.02 per linear foot reduction from the subcontract proceeds, plus the retirement of the balance of the indebtedness at the rate of $300.00 per month. Thereafter, Hicks had a promissory note prepared which was generally consistent with Owen's counter offer. (It did not reflect the $.02 per linear foot reduction.) However, because APAC still insisted on a more substantial down payment, this promissory note was never tendered to Owen or Clardy. Thereafter, the settlement negotiations reached an impasse. Ironically, considering the terms of the offer and the counter offer, the parties were less than $250.00 apart as to the down payment amount.

On October 30, 1992, only eleven days after receiving the check from Wal–Mart, APAC, on the advice of its attorney, filed suit in the Chancery Court of Lowndes County requesting a declaratory judgment as to its rights under the subcontract. Hicks testified that it was his intention after filing the lawsuit to request the court for an expedited hearing pursuant to Rule 57, Mississippi Rules of

Civil Procedure. This would have allowed the parties to have an early determination of their respective rights under the subcontract. Unfortunately, neither Clardy nor his attorney were agreeable to this procedure.

Clardy filed an answer and counterclaim alleging that APAC was liable for actual, extracontractual, and punitive damages because it had no arguable reason not to pay the net subcontract amount in the sum of $6,025.40.

Shortly thereafter, Clardy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and removed the state court litigation to this court.

### III.

At the conclusion of APAC's proof, Clardy moved for a directed verdict on the issue of contractual damages. In a bench opinion, the court sustained the motion, offering the following conclusions and reasons:

1. Because the typewritten provision in the subcontract conflicted with the printed provision in paragraph 17, the subcontract was obviously ambiguous. Short of an agreement, there was no way to reconcile the conflicting terms.

2. Because the subcontract was prepared by APAC and because the typewritten provision was inserted by APAC's representative, Michael Bogue, the subcontract had to be construed more strongly against APAC.

3. The specific typewritten provision should be given more weight than the general printed provisions as recognized by the standards of contract interpretation. See, Restatement, Second, Contracts § 203(d) (1981).

4. Because of the ambiguity, extrinsic evidence by way of parole testimony was necessarily admissible to determine the intent of the parties at the time that the subcontract was executed.

5. The overall thrust of the parole testimony indicated that Clardy was to receive the subcontract proceeds less $.02 per linear foot to be applied toward his prior debt. This conclusion takes into consideration Bogue's testimony that he did not intend for the

typewritten provision to fully waive the setoff effect of the printed provisions, as well as, his testimony that if Clardy had made satisfactory arrangements to pay his debt to APAC that Clardy would have gotten the full subcontract proceeds less the $.02 per linear foot reduction. The most revealing testimony, however, was that of McCown who stated that he had told personnel at APAC to pay Clardy the net subcontract proceeds when the check was received from Wal–Mart. The court was certainly cognizant of Clardy's testimony that he would not have taken this job had he thought he would not get paid.

As such, the court determined that Clardy should recover judgment from APAC in the sum of $6,025.40, plus interest accruing at the highest lawful rate under state law from and after October 19, 1992.

### IV.

In the opinion of the court, this is a proceeding that could have been and, indeed, should have been resolved in the Chancery Court of Lowndes County several years ago. To the contrary, it has been fiercely litigated in this court with several rounds of discovery, including numerous depositions. One problem that contributed to the protracted course of this litigation was the inability of APAC to settle on a theory to defend the allegations of Clardy's counterclaim. Coincidentally, the court has already sustained a motion for sanctions against APAC and/or its attorneys, Gholson, Hicks, Nichols, and Ward, on August 16, 1994, because, by changing its approach to the defense of the counterclaim, Clardy's attorneys were required to perform a significant amount of unnecessary work. The court will further address this issue hereinbelow.

■ Although the court has found that Clardy is entitled to contractual damages, the facts in this case do not justify an award of extracontractual or punitive damages. This conclusion is based on the following reasons:

1. The subcontract was clearly ambiguous. The admission of parole testimony was essential to resolve the ambiguity. The court was unable to decide the issue based

exclusively on the "four corners" of the sub-contract or the standards of contract interpretation (cited above), although the latter played a significant part in the decision making process.

2. APAC filed a declaratory judgment lawsuit to ascertain the rights of the parties under the subcontract only eleven days after the dispute arose. This course of action envisioned an expedited hearing pursuant to Rule 57 of the Mississippi Rules of Civil Procedure. Since this court had to ultimately rely on extrinsic evidence to determine the disputed issue, it can find no fault with APAC in placing the matter before a court of competent jurisdiction for a judicial determination. Although APAC did not ultimately prevail as to the contract question, the court is of the opinion that it had an arguable reason to file the declaratory judgment lawsuit. See, *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So.2d 226 (1962); *Seals v. St. Regis Paper Co.*, 236 So.2d 388 (Miss. 1970); *Progressive Cas. Ins. Co. v. Keys*, 317 So.2d 396 (Miss.1975); *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239, 248 (Miss.1977); *Blue Cross & Blue Shield of Miss. v. Campbell*, 466 So.2d 833 (Miss.1984); *State Farm Fire & Casualty Co. v. Simpson*, 477 So.2d 242, 250 (Miss.1985); *Blue Cross & Blue Shield of Miss., Inc. v. Maas*, 516 So.2d 495 (Miss.1987).

3. Because APAC had an arguable reason from the outset to file the declaratory judgment lawsuit, i.e., the ambiguity in the subcontract, the court is also of the opinion that APAC did not breach its duty of good faith and fair dealing which was implied in the subcontract. See *UHS–Qualicare v. Gulf Coast Community Hospital*, 525 So.2d 746 (Miss.1987) and *Cenac v. Murry*, 609 So.2d 1257 (Miss.1992).

4. Part of the contractual dispute can be attributed directly to Clardy. The court cannot ignore his testimony that he signed the subcontract knowing fully that the printed paragraph allowing APAC to offset completely had not been excised or deleted.

## V.

Even if the court found that APAC had no arguable reason not to immediately pay Clardy or that it breached its duty of good faith and fair dealing, the proof of extracontractual damages is practically non-existent, to-wit:

1. Clardy introduced testimony to the effect that he had experienced mental anguish and emotional distress as a result of APAC's not paying him the net amount due under the subcontract. The court can appreciate that Clardy was upset at not being immediately paid. However, whether he is entitled to damages is extremely problematical. His physician, Dr. Raymond Lott, testified that Clardy is a tense individual. He had experienced episodes of anxiety and insomnia prior to the dispute with APAC. He had been taking prescribed medications for these conditions years earlier and continues to do so at this time. Damages for mental anguish related to the episode with APAC in October, 1992, are simply non-quantifiable.

2. Clardy's financial problems had begun to mount before October, 1992. Obviously, he had not paid APAC $9,635.25, that he owed under the February, 1991, contract. According to his own testimony, he had terminated his subdivision development and had entered the asphalt paving business because of financial concerns. Clardy had invested approximately $3,500.00 in labor and materials in the Wal–Mart crack-seal project. The court would be strained to conclude that APAC's failure to pay $6,025.40 brought about Clardy's financial demise, particularly in view of all of the other prevailing circumstances.

3. The issue of extracontractual attorney's fees will be addressed subsequently in paragraph VI.

## VI.

During the course of this litigation, APAC has proffered essentially five theories of defense to the counterclaim filed by Clardy. The court notes that at times there were even slight variations on these theories. They are noted as follows:

1. APAC never intended to limit or waive its authority under paragraph 4 of the subcontract to withhold payment from Clardy. (Actually, paragraph 4 of the subcontract dealt with APAC's right to withhold payment

to Clardy to satisfy any unpaid claims of subcontractors or materialmen furnishing labor or supplies to Clardy. Paragraph 17 of the subcontract is the provision that afforded APAC the right to setoff the debt owed to APAC by Clardy against the payment due Clardy under the subcontract.)

This theory was initially set forth in the petition for declaratory judgment filed in the Lowndes County Chancery Court. Although the subcontract paragraph was incorrectly numbered, this theory provided APAC a plausible reason to file the lawsuit.

2. APAC then asserted that it actually effected a setoff because it became "fully aware of all debt" owed by Clardy.

This theory was set forth in responses to discovery. It is totally implausible due to the fact that the declaratory judgment lawsuit had already been filed which sought to ascertain whether APAC had the right to setoff.

3. APAC subsequently abandoned the "fully aware of all debt" theory and asserted that it had not made the payment to Clardy because Clardy had failed to make satisfactory arrangements to retire his prior debt to APAC.

This theory was asserted in Michael Bogue's deposition given pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. It is not totally without merit since the rationale underpinning the typewritten provision in the subcontract was subject to more than one interpretation.

4. In his deposition, B.A. Atkins, APAC's Division President, indicated that APAC did not pay Clardy because Clardy had refused to sign a promissory note, discussed earlier, which was dated October 28, 1992. This theory is completely erroneous because this particular promissory note was never tendered to Clardy for his signature. When APAC insisted on Clardy making a down payment, the promissory note was "shelved."

During his discovery deposition, Atkins was thoroughly confused about this issue. He apparently thought that Clardy had refused to execute the promissory note because it contained a provision requiring a down payment. Clearly, this was not the case.

5. Lastly, APAC contended that it relied on the advice of its counsel when it elected to file the declaratory judgment lawsuit. Although this defense was not raised by APAC until Atkins' discovery deposition, it apparently existed since shortly after the dispute arose. Both Atkins and Hicks testified, without contradiction, that Hicks advised APAC that a declaratory judgment lawsuit was a viable alternative to resolve the dispute with Clardy. As mentioned earlier, this lawsuit was filed only eleven days after APAC had received the check from Wal–Mart.

Why APAC and its attorneys vacillated in recognizing and asserting defenses to Clardy's counterclaim cannot be easily explained. This is not an overly complicated case. The court surmises that one reason is a breakdown in communication between APAC's middle management, Bogue and McCown, and APAC's upper management, Atkins. This is manifestly evidenced by the fact that Atkins was admittedly unaware of the underlying details of the negotiations regarding the execution of the subcontract that had occurred between Bogue, McCown, and Clardy. As mentioned above, Atkins was also mistaken about Clardy's refusal to sign the promissory note.

Another source of confusion can be traced to the law firm representing APAC, particularly in the preparation of discovery responses, as well as, in communicating effectively with APAC's representatives. Initially, Hicks recognized the legal significance of the subcontract ambiguity and recommended the filing of the declaratory judgment suit. Ultimately, this proceeding was very capably tried before this court by the attorneys representing both parties. However, between the beginning and the end, APAC and its attorneys struggled to identify a viable defense to Clardy's counterclaim. On each occasion when a new defense was advanced by APAC, the attorneys representing Clardy pursued it relentlessly.

█ The court is of the opinion that in the absence of statutory or contractual provisions, attorney's fees are ordinarily not recoverable in a contract dispute unless the facts justify the imposition of punitive dam-

ages. See *Southern Natural Gas Co. v. Fritz,* 523 So.2d 12, (Miss.1987), and *Central Bank of Miss. v. Butler,* 517 So.2d 507 (Miss. 1987). This standard has been relaxed somewhat in "bad faith" insurance litigation where an insurance company has failed to pay without an arguable reason. See *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290 (Miss. 1992), *Necaise v. USAA Cas. Co.,* 644 So.2d 253 (Miss.1992), and *Hans Const. Co. v. Phoenix Assur. Co.,* 995 F.2d 53 (5th Cir. 1993).

Even though this case does not involve an insurance company, the court has already found that there was an arguable basis not to pay the net subcontract proceeds immediately to Clardy. Therefore, even though the standard has been relaxed in insurance litigation, the court does not feel that this case is one where punitive damages, and, as such, extracontractual attorney's fees, are warranted. See *Smith v. Dorsey,* 599 So.2d 529 (Miss.1992) and *Stokes v. Board of Directors of La Cav Improvement Co.,* 654 So.2d 524 (Miss.1995).

■ This is a case, however, where sanctions for protracting the course of this litigation are appropriate. As noted earlier, the court imposed sanctions against APAC and/or its attorneys, Gholson, Hicks, Nichols, and Ward, in the sum of $1,387.50. Having now seen this case fully unfold, particularly the confusing and dilatory role that the improperly asserted defenses to the counterclaim have played, the court is of the opinion that additional sanctions should be imposed. Therefore, the court finds that Clardy is entitled to an additional judgment for sanctions against APAC and/or its attorneys, Gholson, Hicks, Nichols, and Ward, in the sum of $2,500.00.

### VII.

By a separate order of this court, judgment will be awarded to the counterclaimant, Bobby Clardy, d/b/a Clardy Construction as follows:

1. Judgment for contractual damages against APAC–Mississippi, Inc., in the sum of $6,025.40, plus interest accruing after Oc-tober 19, 1992, at the highest rate permitted by state law.

2. Judgment against APAC–Mississippi, Inc., and its attorneys, Gholson, Hicks, Nichols, and Ward, in the sum of $2,500.00, as additional sanctions for unreasonably protracting the course of this litigation.

Clardy's claims for extracontractual and punitive damages are hereby overruled other than the aforementioned sanctions award.

All costs accrued by virtue of this proceeding shall be taxed to the plaintiff, APAC–Mississippi, Inc.